# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 5, 2009 Session

## IRIS KAY SNODGRASS v. ROBERT H. SNODGRASS

**Appeal by permission from the Court of Appeals, Eastern Division**
**General Sessions Court for Loudon County**
**No. 9446     William H. Russell, Judge**

---

**No. E2007-00576-SC-R11-CV - Filed October 9, 2009**

---

We granted permission to appeal in this divorce case to address whether a spouse's 401(k) account is a "retirement or other fringe benefit right[] relating to employment" under Tennessee Code Annotated section 36-4-121(b)(1)(B) such that any increase in the account's value that accrues during the marriage is marital property. We hold as follows: (1) the parties' 401(k) accounts are "retirement or other fringe benefit rights relating to employment"; (2) the entire net amount by which the parties' 401(k) accounts increased in value during the period of the parties' marriage is marital property; (3) the premarital balances in the parties' 401(k) accounts remain their separate property; (4) Husband did not transmute his entire 401(k) account to marital property when he made a single withdrawal for marital purposes; and (5) the trial court correctly divided the parties' defined benefit pensions by reference to the monthly income each spouse was receiving rather than by reference to the present cash value of each spouse's pension. The judgment of the Court of Appeals is affirmed in part and reversed in part.

### Tenn. R. App. P. 11; Judgment of the Court of Appeals
### Affirmed in Part, Reversed in Part

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined. GARY R. WADE, J., filed a separate opinion concurring in part and dissenting in part.

Robert H. Green and Catherine E. Shuck, Knoxville, Tennessee, for the appellant, Robert H. Snodgrass.

Craig L. Garrett, Maryville, Tennessee, for the appellee, Iris Kay Snodgrass.

# OPINION

## Factual and Procedural Background

Robert H. Snodgrass ("Husband") and Iris Kay Snodgrass ("Wife") were married in July 1982. Wife filed for divorce in February 2005. No children were born of the marriage.

At the time they wed, Husband and Wife were each employed by Alcoa[1] ("Employer"). Each had participated in the employer-provided Alcoa Savings Plan for Salaried Employees ("the 401(k) Plan")[2] prior to their marriage; accordingly, each spouse had a separate 401(k) account at the time they married. At the time of their marriage, Husband's balance in his 401(k) account was approximately $54,000; Wife's balance in her 401(k) account was approximately $17,000.

Husband and Wife both continued to contribute to their 401(k) accounts during the marriage, and Employer also continued to make contributions. From time to time each party made changes in the investment vehicles used. Also during the marriage, Husband made a single withdrawal of $180,000 from his 401(k) account and used that money toward the purchase of the couple's marital residence. At the time the parties' divorce was granted, the balance in Husband's 401(k) account was approximately $2,301,000; the balance in Wife's account was approximately $691,000.

The parties resolved most of their issues through mediation, and the trial court granted their divorce by order entered April 10, 2006. As acknowledged in the trial court's order, the parties reserved for a hearing the division of their 401(k) accounts and the division of their defined benefit pensions payable by Employer. The parties stipulated that, with respect to the marital property portions of their 401(k) accounts and pensions, "an equitable division is an equal division." They disagreed, however, on what portions of the accounts and pensions were marital property.

Prior to or contemporaneously with the hearing, Wife's counsel filed a motion in limine to exclude expert testimony with regard to valuing the growth attributable to the premarital balances in the 401(k) accounts.[3] Wife's counsel argued that "the increase in that retirement benefit during the marriage is all marital property subject to an equitable division." Accordingly, counsel asserted, no expert testimony was necessary or relevant with respect to determining how much of each account's appreciation was attributable to the premarital balances. Wife also objected to any expert testimony with respect to assigning a present cash value to each of the parties' pensions.

---

[1] This acronym stands for "Aluminum Company of America."

[2] Some of the parties' statements from the "Savings Plan" refer to it as a 401(k) plan, and letters from the Alcoa Corporate Center refer to it as "Savings/401k." Regardless of its name, the parties agree that the Alcoa "Savings Plan" is a 401(k) plan. We discuss the attributes of 401(k) plans below.

[3] The record does not include a copy of the motion in limine. We have gleaned our information about this motion from the transcript of the hearing.

Over Husband's opposition to the motion and his counsel's argument that expert testimony was necessary to resolve the issues regarding the 401(k) accounts and the pensions, the trial court found that "the 401(k)s are retirement benefits" and granted Wife's motion in limine. The hearing proceeded with brief testimony by Husband and Wife.

Wife testified that Husband retired from Employer in 1994 and she retired from Employer in 1997. She and Husband were both drawing their pensions at the time of the hearing. Wife explained that they made a joint decision on Husband's retirement that he would "opt into" the surviving spouse benefit available in conjunction with his pension.

Wife testified that she and Husband funded their 401(k) accounts with wages withheld from their paychecks; Employer also contributed to each of their accounts. She made no withdrawals from her account during the marriage; Husband withdrew $180,000 from his 401(k) account in 1999 when they bought a house.[4]

Husband testified that he worked for Employer from 1962 until his retirement. He worked as a mechanical engineer and Wife worked as a secretary. He explained that he used the $180,000 he withdrew from his 401(k) account to assist in the purchase of a marital home. Husband conceded that the home purchased in part with these funds became marital property. In conjunction with their divorce, Husband paid Wife for her one-half interest in the house. He made no other withdrawals from his 401(k) account.

Husband explained that his contributions to his 401(k) account stopped when he retired. He also testified that he "followed" [the changes in value of] the couple's 401(k) accounts and occasionally made transfers between funds within his account.

On cross-examination, Husband acknowledged that he and Wife would discuss their 401(k) accounts and try to decide how best to invest their monies based on the performance of Employer's stock. He testified that this occurred one to three times a year. According to Husband, Wife would also make transfers after these conversations "if she chose to do so."

After the hearing,[5] the trial court entered an order in which it awarded each party his or her premarital balance in his or her 401(k) account as the party's separate property. The trial court found the entire amount of growth in each account which accrued during the marriage to be marital property and divided it equally. With respect to the parties' pensions, the trial court determined that the marital portion of Husband's monthly benefit was $2,754.18 ("Husband's marital pension

---

[4]A proffered exhibit to the hearing indicates that the value of Husband's 401(k) account at the time of this withdrawal was over $2,000,000.

[5]The trial court allowed Husband to proffer for the appellate record, but did not admit, the expert testimony regarding valuation of both the 401(k) accounts and the parties' pension benefits. Given our disposition of this case, we need not include the proffered testimony here.

3

payment"). The trial court also determined that the marital portion of Wife's monthly benefit was $1,121.22 ("Wife's marital pension payment"). The trial court awarded Wife 50% of Husband's marital pension payment and awarded Husband 50% of Wife's marital pension payment. This division resulted in the trial court ordering Husband to pay Wife a sum certain every month in order to equalize the marital portion of the pension benefits.

Husband appealed. The Court of Appeals held that the trial court erred in ruling that *all* of the marital growth in the parties' 401(k) accounts was "retirement benefits" and therefore marital property. Snodgrass v. Snodgrass, No. E2007-00576-COA-R3-CV, 2008 WL 836392, at *8 (Tenn. Ct. App. Mar. 31, 2008). The Court of Appeals determined that Husband's withdrawal of $180,000 from his 401(k) account rendered the *entire* account marital property, however, under the doctrines of commingling and transmutation. Id. at *6, 8. As to Wife's 401(k) account, the Court of Appeals remanded for a determination of what amount in the account was attributable to the appreciation of the premarital balance, which amount (together with the premarital balance) would be deemed Wife's separate property "if [the appreciation on the premarital balance] can be segregated from the marital contributions and their gains." Id. at *8. The Court of Appeals affirmed the trial court's decision with respect to the parties' pensions. Id.

Husband applied for permission to appeal to this Court, which we granted in order to address whether the parties' 401(k) accounts are "retirement or other fringe benefit rights relating to employment" such that the net growth of the accounts that accrued during the marriage is marital property under Tennessee Code Annotated section 36-4-121(b)(1)(B) (2005). We also address whether the courts below erred in dividing the parties' defined benefit pension plans on the basis of the monthly payments each spouse was receiving instead of on the basis of the pensions' present cash values.

**STANDARD OF REVIEW**

The classification of particular property as either separate or marital is a question of fact to be determined in light of all relevant circumstances. See Langford v. Langford, 421 S.W.2d 632, 634 (Tenn. 1967); Cutsinger v. Cutsinger, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). This Court gives great weight to a trial court's decisions regarding the division of marital assets, and we will not disturb the trial court's ruling unless the distribution lacks proper evidentiary support, misapplies statutory requirements or procedures, or results in some error of law. Keyt v. Keyt, 244 S.W.3d 321, 327 (Tenn. 2007). As to the trial court's findings of fact, "we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary." Id. However, we accord no presumption of correctness to the trial court's conclusions of law. Id.

4

## ANALYSIS

The primary issue in this case is how to characterize 401(k) accounts that were established prior to the parties' marriage but to which contributions were made during the marriage.[6] Husband and Wife concede that contributions to their 401(k) accounts made by each of them and Employer during the marriage, as well as the net gains on those contributions, are marital property. We agree. The parties also concede that the balances existing at the time of the marriage are separate property. We agree. The parties disagree only as to the status of the net gains in both accounts that accrued during the marriage but that could be attributed to the accounts' premarital balances.

## I. Marital or Separate Property

Tennessee is a "dual property" state because its domestic relations law recognizes both "marital property" and "separate property." See generally Tenn. Code Ann. § 36-4-121; Eldridge v. Eldridge, 137 S.W.3d 1, 12 (Tenn. Ct. App. 2002). When a married couple seeks a divorce, the "marital property" must be divided equitably between them, without regard to fault on the part of either party. Tenn. Code Ann. § 36-4-121(a)(1). "Separate property" is not part of the marital estate and is therefore not subject to division. See Cutsinger, 917 S.W.2d at 241. Thus, it is imperative that the parties, the trial court, or both identify all of the assets possessed by the divorcing parties as either marital or separate so that a proper division can be accomplished.

The definitions of "separate property" and "marital property" are set forth in Tennessee Code Annotated section 36-4-121(b) and include the following:

> "Separate property" means . . . [a]ll real and personal property owned by a spouse *before marriage*, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended . . . *[and] [i]ncome from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1)*.

Id. § 36-4-121(b)(2)(A) & (C) (emphases added). The contributions made to Husband's and Wife's 401(k) accounts prior to their marriage clearly fall within this definition of separate property. In contrast,

> "Marital property" means *all* real and personal property, both tangible and intangible, *acquired* by either or both spouses *during the course of the marriage* up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . [and] (B) . . . *includes* [1] income from, and any increase in value during the marriage of, property determined to be separate

---

[6]We do not address in this case the status of any gains experienced in a "dormant" 401(k) account owned by a spouse in conjunction with employment that ended prior to the spouse's marriage.

5

property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, *and* [2] *the value of* vested and unvested pension, vested and unvested stock option rights, *retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.*

Tenn. Code Ann. § 36-4-121(b)(1)(A) & (B) (emphases added). A close parsing of this statutory language reveals that the two clauses of (B) are independent and refer to distinct types of marital property.

Relevant to this case, the contributions to the parties' 401(k) accounts that were made during the marriage, and the net gains on those contributions realized during the marriage, meet the definition of marital property as "property . . . acquired . . . during the course of the marriage." Id. at (b)(1)(A). The unresolved issue in this case concerns the post-wedding gains on the balances that existed in the parties' accounts when they got married.

Reading the statutes defining separate and marital property in tandem makes clear that income from or appreciation of premarital separate property is presumed to be separate *unless* it meets any of the criteria of subsection (b)(1) or another statutory or common law provision. Thus, an increase in value of separate property that accrues during the marriage may be deemed marital property "if each party substantially contributed to its preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B); see also Keyt, 244 S.W.3d at 328-29. Or, income from or appreciation of premarital separate property may be deemed marital if it represents "the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage." Tenn. Code Ann. § 36-4-121(b)(1)(B). Further, separate property may be deemed marital by operation of law under theories of commingling or transmutation. Langschmidt v. Langschmidt, 81 S.W.3d 741, 747 (Tenn. 2002).

In this case, the parties agree that the premarital balances in their 401(k) accounts are separate property. They dispute whether the net gains that accrued during the marriage on those premarital balances became marital property under any of these theories.

A. 401(k)s as "Retirement or Other Fringe Benefit Rights
Relating to Employment"

*1. Statutory Language*

We begin by noting the significance of a party's claim that the disputed property is an employment-related pension, stock option right, or retirement benefit. As set forth above, Tennessee Code Annotated section 36-4-121(b)(1)(B) contains two *independent* definitions of marital property. The first clause refers to income from and appreciation on separate property that accrues during the marriage where "each party substantially contributed to [the separate property's] preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B). The second clause refers to "the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe

6

benefit rights relating to employment that accrued during the period of the marriage." If the property at issue is deemed to fit within this second clause, then it is marital property without regard to "substantial contributions" by either spouse. See Batson v. Batson, 769 S.W.2d 849, 857 (Tenn. Ct. App. 1988) (recognizing that "[t]he pension provision is not modified by the 'substantial contribution' requirement preceding it" and that "pension benefits earned by a spouse during the marriage are marital property even though the other spouse did not contribute directly to their preservation or appreciation").

Once the property is determined to be a pension, stock option, retirement or other fringe benefit right relating to employment, the issue becomes one of determining the value of that benefit that accrued during the marriage.[7] In Umstot v. Umstot, 968 S.W.2d 819 (Tenn. Ct. App. 1997), our Court of Appeals considered an argument similar to the one being made by Husband in this case. In Umstot, the husband had a "retirement plan" that held a balance of $4,437 at the time of marriage. The plan grew by $154,106 during the marriage. The husband argued that both the premarital balance and the growth attributable to that amount should have been deemed his separate property. The Court of Appeals disagreed, stating that "the critical determination is whether the value 'accrued' during the marriage." Id. at 822. The court held that "all of Husband's retirement plan, except $4,437.00, accrued during the marriage." Id. Accordingly, the entire balance of the husband's retirement plan was marital property except for the premarital balance of $4,437. Id.

---

[7] Justice Wade concludes in his separate opinion that retirement benefits should be initially classified as either marital or separate property based solely on the timing of the acquisition. This interpretation essentially renders Tennessee Code Annotated section 36-4-121(b)(1)(B)[2] superfluous. Separate property is already defined under Tennessee Code Annotated section 36-4-121(b)(2)(A) & (C) as "[a]ll . . . property owned by a spouse before marriage, . . . [and] [i]ncome from and appreciation of property owned by a spouse before marriage" except marital property defined under subdivision (b)(1). Justice Wade's understanding of the definition of the word "accrue" is that the date the asset is acquired is the date it accrues, and all the interest or appreciation is classified as of that date. Interest and appreciation on an asset acquired pre-marriage will always be separate. Interest and appreciation on an asset acquired post-marriage will always be marital.

Under that approach, however, there is no need for (b)(1)(B)[2], which states that marital property includes "the value of . . . retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage." If the appreciation is linked to the date of acquisition of the retirement benefit, this language is surplusage. Tennessee Code Annotated section 36-4-121(b)(1)(A) already classifies as marital property all assets "acquired by either or both spouses during the course of the marriage." By limiting the final eight words of (b)(1)(B) – "that accrued during the period of the marriage" – to only the value of retirement benefits acquired during the period of marriage, the whole second clause of (b)(1)(B) becomes redundant after (b)(1)(A). Of course, this reading would violate the rule against surplusage. See State v. Black, 815 S.W.2d 166, 197 (Tenn. 1991) (Reid, C.J., concurring in part and dissenting in part) ("Each part and every word of a statute is presumed to have meaning and purpose and should not be construed as superfluous or as surplusage.") (citing Tidwell v. Collins, 522 S.W.2d 674, 676-77 (Tenn. 1975); Marsh v. Henderson, 424 S.W.2d 193, 196 (Tenn. 1968)).

We agree with this reasoning. If a contested piece of property fits within the second clause of (b)(1)(B), then the *entire* net increase in value of that property that accrues during the marriage, through whatever means or methods, is deemed marital, even if the property contains an element of separate property.[8] See Franklin v. Franklin, C/A No. 03A01-9410-CV-00364, 1995 WL 371573, at *2 (Tenn. Ct. App. June 21, 1995) (holding that "everything in Husband's thrift and profit sharing plan, save the $5,091 in there at the time of the marriage, 'accrued' after the marriage" and was therefore marital property because "[t]his code section does not differentiate between value added by 'passive income' and value added by additional contributions during the marriage"); see also McKee v. McKee, No. M1997-00204-COA-R3-CV, 2000 WL 666363, at *3 (Tenn. Ct. App. May 23, 2000) (recognizing that "marital property includes any increase during the marriage in the value of retirement or pension rights, whether through passive growth or through either party's direct or indirect contribution").

If, however, the property at issue does not fit within this second clause and is otherwise deemed to be separate, any income from or appreciation of the property will remain separate unless a court finds sufficient evidence to support a theory of substantial contribution, commingling, transmutation, gift to the marital estate, or some other theory by which otherwise separate property may be deemed marital.

In this case of first impression, we address whether an employer's 401(k) plan, and its employees' individual 401(k) accounts, constitute a retirement or other fringe benefit right under the second clause.

## 2. *401(k) Basics*

A 401(k) plan is structured under the Employment Retirement Income Security Act ("ERISA")[9] and the federal tax laws to encourage employees to use it as a vehicle to defer current compensation and save for retirement. According to one knowledgeable practitioner,

> A 401(k) plan, technically known as a CODA (Cash or Deferred Arrangement), is an arrangement whereby an *employer* allows an eligible *employee* to choose between receiving a portion of his or her paycheck in "cash" or having that portion contributed to a *retirement plan* on his or her behalf (the "deferred

---

[8] We agree with Justice Wade's point in his separate opinion that the statutory language of (b)(1)(B) is less than a model of clarity. Nevertheless, the statute is clear insofar as referring to certain rights that are capable of *accruing value over time*. That is, the statute unambiguously refers to rights that are subject to *increasing in value*. As set forth more fully below, a 401(k) account may increase in value over time through either direct contributions (active growth) or appreciation (passive growth). Significantly, the statute does not distinguish between an accrual of value based on the appreciation of premarital contributions and an accrual of value based on the appreciation of marital contributions. It simply refers to the accrual of value that occurs during the marriage. Thus, if the increase in value occurs during the period of the marriage, the statute indicates that the entire increase is marital property. Langschmidt is not controlling on this issue because it did not deal with any of the rights specified in (b)(1)(B).

[9] 29 U.S.C.A. §§ 1001-1461 (West 2008, 2009).

8

arrangement"). The term "401(k)" refers to the section of the Internal Revenue Code of 1986, as amended (the "Code")[,] where the tax-qualification requirements for this type of plan are found.

Andrew L. Gaines, <u>An Introduction to Defined Contribution Plans</u>, in Understanding ERISA 2008, at 136, 143 (PLI Tax Law & Estate Planning, Course Handbook Series No. 14479, 2008) (emphases added). And, according to the Internal Revenue Service,

> [a] 401(k) plan is a qualified (i.e., meets the standards set forth in the Internal Revenue Code (IRC) for tax-favored status) . . . plan under which an *employee* can elect to have the *employer* contribute a portion of the employee's cash wages to the plan on a pre-tax basis. These deferred wages (elective deferrals) are not subject to federal income tax withholding at the time of deferral, and they are not reflected as taxable income on the employee's Form 1040, U.S. Individual Income Tax Return.

401(k) Resource Guide - Plan Sponsors - 401(k) Plan Overview, http://www.irs.gov/retirement/sponsor/article/0,,id=151800,00.html (last visited Aug. 17, 2009) (emphases added).

The deferred taxation feature of a 401(k) plan creates an incentive for employees to participate. <u>See</u> Steven J. Franz et al., <u>401(k) Answer Book</u>, Q 1:9, at 1-6 (Aspen Publishers 2009). Because an employee will generally have to pay federal income taxes *plus* an additional penalty tax of 10% on money withdrawn prior to reaching age 59½, 26 U.S.C.A. § 72(t) (West Supp. 2008), there is also an incentive to leave the deferred compensation in the account until an employee reaches (or approaches) his or her retirement years.

401(k) plans are also referred to as "defined contribution" plans, <u>see</u> 29 U.S.C.A. § 1002(34) (West 2008), described by the United States Department of Labor as a plan which "does not promise a specific amount of benefits at retirement." Retirement Plans, Benefits & Savings - Types of Retirement Plans, http://www.dol.gov/dol/topic/retirement/typesofplans.htm (last visited Aug. 17, 2009). 401(k)s therefore contrast with defined *benefit* plans, which are a type of pension plan that "promises a specified monthly benefit at retirement." <u>Id.</u> Instead, defined contribution plans involve monies contributed to the employee's account which are then invested on the employee's behalf. <u>Id.</u> Ultimately, the employee receives the balance in her account, which consists of contributions plus or minus investment gains or losses. <u>Id.</u> These gains and losses are an integral part of the account. "The value of the account will fluctuate due to the changes in the value of the investments." <u>Id.</u>

An employee participating in a 401(k) plan typically designates a portion of her wages to be withheld from her paycheck and deposited directly into her 401(k) account. <u>Id.</u> As an incentive for its employees to participate (indeed, often as an incentive for applicants to accept employment), an employer has

9

the option of making contributions on behalf of all participants, making matching contributions based on employees' elective deferrals, or both. These employer contributions can be subject to a vesting schedule which provides that an employee's right to employer contributions becomes nonforfeitable only after a period of time, or be immediately vested.

401(k) Resource Guide - Plan Sponsors - 401(k) Plan Overview, http://www.irs.gov/retirement/sponsor/article/0,,id=151800,00.html (last visited Aug. 17, 2009). Thus, by electing to participate in an employer's 401(k) plan, an employee may become entitled to additional compensation.

An employer providing a 401(k) plan generally is required to have a plan trustee whose duty it is to handle contributions, plan investments, and distributions. See 29 U.S.C.A. § 1103 (West 2009). The monies placed in a 401(k) account are typically invested in one or more investment vehicles offered by the employer. These vehicles may consist of shares of the employer's stock, mutual funds, or some other forms of investments. See Franz, 401(k) Answer Book, Q 6:10, at 6-5. The employee may have the choice of which available vehicles to use. See id., Q 7:1, at 7-2. Over time, the value of the vehicles in which the monies are invested are expected (or at least hoped) to grow through appreciation together with reinvested interest and/or dividends.

Significantly to the issue before us, individuals may participate in a 401(k) plan *only* through their employment. See 26 U.S.C.A. § 401 (West 2002). A 401(k) account is therefore distinct from an Individual Retirement Account ("IRA"), a tax-deferred and age-sensitive savings vehicle available to individuals outside of their employment. See generally 26 U.S.C.A. § 408 (West 2002). Additionally, an employee may possess only one 401(k) account per employer.[10] An employee may not, for example, open a new account at the time of marriage in order to segregate pre- and post-marital contributions and gains.

### B. The Alcoa 401(k) Plan

The parties agree that the Alcoa Savings Plan for Salaried Employees is a 401(k) plan. Although this Court has not previously considered this question, given our examination of the attributes of 401(k) plans and the individual accounts held by employees therein, we have no trouble concluding that Husband's and Wife's 401(k) accounts are "retirement or other fringe benefit rights relating to employment" under Tennessee Code Annotated section 36-4-121(b)(1)(B).[11] Clearly, the right to participate in a 401(k) plan is a right related to employment. Also, the plan is managed by the employer or its designee. Whether the right is considered one of "retirement" or one of "other

---

[10] Because 401(k) accounts are funded through payroll deductions, they are correlated with the employee's social security number. Additionally, there are annual limits on the amount of elective deferrals. See Franz, 401(k) Answer Book, Q 9:1, at 9-2.

[11] Although this case does not involve a 457 deferred compensation plan, which may be available to state and local government employees, we recognize that such plans share many of the same characteristics as 401(k) plans.

fringe benefit" does not impact our conclusion.

The right to participate in a 401(k) plan, if exercised, is also capable of accruing value over time beyond the parties' contributions, both through employer contributions and through investment gains. A spouse's 401(k) account therefore fits the (b)(1)(B) definition of marital property as a "retirement or other fringe benefit right[] relating to employment." Whether the monies within the account are marital property or separate property depends on *when* they accrued, not *how*. See Franklin, 1995 WL 371573, at *2 (recognizing that, in assessing marital portion of retirement benefits, "[t]he critical determination is whether the value 'accrued' during the marriage").

### C. Distinguishing Marital from Separate Property

In summary, then, Tennessee Code Annotated section 36-4-121(b)(2)(C) defines separate property as including "[i]ncome from and appreciation of property owned by a spouse before marriage" but specifically excludes such income and appreciation when it is "characterized as marital property under subdivision (b)(1)." That portion of a 401(k) account existing on the date of marriage remains separate property. Because, however, the account is a "retirement or other fringe benefit right[] relating to employment," id. at (b)(1)(B), the *entire* net amount of income and appreciation that was experienced in Husband's and Wife's 401(k) accounts during their marriage is characterized as marital property, including that which accrued on the premarital balances. See also Langschmidt, 81 S.W.3d at 749 ("Retirement benefits accrued during the marriage clearly are marital property under Tennessee law.").

While our decision today does not conflict directly with our prior determinations about similar but distinguishable benefits, we acknowledge that our analysis in prior cases has often lacked the clarity for which we strive today. For example, in Harrison v. Harrison, 912 S.W.2d 124 (Tenn. 1995), this Court dealt with the husband's one-half undivided interest in real property. At that time, Tennessee Code Annotated section 36-4-121(b)(1)(B) provided:

> "Marital property" includes income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation *and* the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B) (1991) (emphasis added).

During the marriage, the value of the real property in question appreciated from $7,000 to $1,361,750. The parties agreed, and the record revealed, that the sole cause of the property's significant appreciation in value was the construction of an interstate highway across the property. Nevertheless, the wife argued that the appreciation was marital property because she substantially contributed to its preservation and appreciation. Although the wife established that she assisted in the care of cattle on the property and that payments on an indebtedness secured by a deed of trust on

11

the property were made from marital funds, this Court held that the evidence did not reveal that the wife *substantially contributed* to the preservation and appreciation of the real property, and, therefore, the appreciation of the husband's one-half undivided interest was his separate property. Harrison, 912 S.W.2d at 127.

In so holding, this Court stated that Tennessee Code Annotated section 36-4-121(b)(1)(B) "does not permit the conclusion that *any* increase in value [of separate property] during marriage constitutes marital property. The increase in value constitutes marital property *only* when the spouse has substantially contributed to its preservation and appreciation." Harrison, 912 S.W.2d at 127 (second emphasis added). While this statement was accurate with respect to the first clause of subsection 121(b)(1)(B), which applied in that case, it was inaccurate even then as to any property defined as a "vested pension, retirement or other fringe benefit right" because those properties did not require substantial contribution by the parties in order to be deemed marital.

In Cohen v. Cohen, 937 S.W.2d 823 (Tenn. 1996), we considered whether unvested pension benefits accrued in conjunction with employment during the marriage are marital property. We first looked to the broad definition of marital property: "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A) (1991). We determined that, under this "unambiguous language, clearly the right to unvested retirement benefits is marital property." Cohen, 937 S.W.2d at 827. We also recognized in Cohen that unvested pension benefits are a form of deferred marital compensation, and that "[s]ince the benefits are acquired with the fruits of the wage earner's labor, were it not deferred it could benefit the parties during the marriage." Id. at 829.

The husband argued, however, that "the plain language of subsection (B) which specifically identifies vested pension benefits as marital property impliedly excludes unvested retirement benefits." Id. at 827. At that time, subsection (B) defined marital property as including "the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage." Tenn. Code Ann. § 36-4-121(b)(1)(B) (1991). We rejected the husband's argument, concluding that

> the legislature intended to include unvested retirement benefits as marital property. First, the definition of marital property found in subsection (A) is virtually all inclusive. That broad definition clearly includes unvested retirement benefits. Second, subsection (B), which serves to append to subsection (A's) definition "vested pension, retirement, or other fringe benefit rights" and certain forms of separate property does not exclude retirement benefits. Third, we note that unvested retirement benefits are not included in the definition of separate property.

Cohen, 937 S.W.2d at 828 (footnote omitted). We specifically noted that the statute's provision that marital property "includes" "the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage" operated *not* to exclude unlisted items, but operated

12

merely to specifically include listed ones.  Id. at 828 n.4.

We also observed in Cohen that "including vested and unvested retirement benefits in the definition of marital property is consistent with the legislature's intent to recognize a homemaker's contribution to the marriage."  Id. at 828.  In retrospect, while this observation was not inaccurate, it unfortunately combined two distinct statutory provisions in a single reference.  The "homemaker's contribution" actually refers to the analysis used in determining whether an increase in value of *separate property* is marital by virtue of the non-owning spouse's contributions to the property's preservation and appreciation.  See Tenn. Code Ann. § 36-4-121(b)(1)(B) & (C) (1991).  But evaluation of the homemaker's contribution is simply not necessary when analyzing whether a particular piece of property fits within the definition of "pension, retirement or other fringe benefit rights."  Id. at (b)(1)(B).

In Langschmidt, 81 S.W.3d at 742, this Court considered the same statutory language it considered in Harrison:

> "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation *and* the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B) (1996) (emphasis added).  At issue were IRAs that had been funded by the husband prior to his marriage.[12]  The wife did not dispute that the premarital contributions to the accounts remained separate property but argued that the investment gains in these IRAs that accrued during the marriage were marital property because the IRAs were retirement benefits.  This Court phrased the issue as "whether the increase in value of a spouse's separate [IRA] during the marriage is automatically marital property under Tenn. Code Ann. § 36-4-121(b)(1)(B) when the IRA is funded entirely with premarital earnings."  Langschmidt, 81 S.W.3d at 742.  We held with respect to that issue that "the appreciation of a spouse's IRA during the marriage is separate property when funded completely with premarital earnings and absent substantial contribution by the other spouse to the preservation and appreciation of the IRA."  Id.  While we believe that our ultimate holding in Langschmidt was correct, our analysis lacked clarity.

In Langschmidt, we first acknowledged that "[r]etirement benefits accrued during the

---

[12]As indicated earlier in this opinion, IRAs present individuals with the opportunity to create a tax-deferred investment account outside of their employment.  IRAs may also be available through employment.  See Franz, 401(k) Answer Book at 22-2 ("Individual retirement [accounts] (IRAs) were established by . . . ERISA to allow eligible employees to make deductible contributions that accumulate on a tax-deferred basis to be used for retirement benefits. Unlike a 401(k) plan . . . , an IRA may be set up by an individual.  IRAs may also be sponsored by an employer, but it is far more likely that employees will set up their own IRAs.").  From our close review of Langschmidt and the Court of Appeals' decision in that case, see No. W1999-00434-COA-R3-CV, 2001 WL 468559 (Tenn. Ct. App. May 1, 2001), it appears that the husband's IRAs were not related to his employment.

marriage clearly are marital property under Tennessee law," id. at 749, but rejected the wife's argument that the IRAs were retirement benefits within the meaning of the statute because they "d[id] not represent deferred compensation during the marriage, but were funded with premarital assets." Id. In drawing this conclusion, we relied on Cohen for its description of retirement benefits as "'part of the consideration earned by an employee, [] and as a form of deferred compensation provided by the employer for work already performed.'" Id. (quoting Cohen, 937 S.W.2d at 829).

This statement is technically correct as far as it goes, but our decision in Langschmidt failed to articulate clearly the correct analytical approach. The IRAs at issue in Langschmidt were not "vested pension, retirement or other fringe benefit rights" within the meaning of (b)(1)(B) because they were not associated with the husband's employment.[13] Although the statute at issue in Langschmidt did not include the language "relating to employment" as the current statute does, that relationship was implied because pensions and fringe benefits are always associated with employment. Rather, the IRAs at issue in Langschmidt had been funded by the husband in his *individual* capacity entirely with premarital funds and prior to his marriage. The Langschmidt IRAs were husband's separate property because, first and foremost, they did not fit the definition of marital property set forth in the second clause of (b)(1)(B).[14] By the same token, *because* the IRAs at issue in that case were not a product of the husband's employment, they did not involve deferred compensation.

We also rejected in Langschmidt, on the basis of insufficient proof, the wife's alternative contention that "she substantially contributed to the preservation and appreciation of the Husband's IRA assets." 81 S.W.3d at 750. All of the growth that accrued in the IRAs during the marriage therefore remained the husband's separate property. Id.

Lacking clear guidance from this Court, our Court of Appeals has also used inconsistent analyses and reached inconsistent results in considering specifically whether 401(k) accounts are "retirement or other fringe benefit rights relating to employment." See, e.g., Pedine v. Pedine, No. E2008-00571-COA-R3-CV, 2009 WL 585943, at *6 (Tenn. Ct. App. March 9, 2009) (holding that a portion of the marital growth in the husband's 401(k) account was attributable to his premarital balance and was therefore his separate property because that "increase in value was purely market-driven"); Curry v. Curry, No. M2007-02446-COA-R3-CV, 2008 WL 4426895, at *10 (Tenn. Ct. App. Sept. 18, 2008) (holding that, with respect to the husband's 401(k) account, "any contributions made to the 401(k) by [husband] prior to the marriage were . . . his separate property. However, any amount contributed during the marriage, and any increase in the value of the 401(k) that accrued during the marriage[,] is marital property."); White v. White, No. E2006-00595-COA-R3-CV, 2007 WL 63602, at *4 (Tenn. Ct. App. Jan. 10, 2007) (holding that the premarital balance in the husband's 401(k) account was not deferred marital compensation and that the post-marriage appreciation

---

[13]We express no opinion on whether the outcome would be different if the IRAs had been provided through the husband's employment.

[14]In 2002, the Legislature amended the definition of separate property to specifically include IRAs held prior to marriage. See Tenn. Code Ann. § 36-4-121(b)(2)(A) (2005); 2002 Tenn. Pub. Acts ch. 651, § 8.

14

attributable to that balance was the husband's separate property because "there was no proof of Wife's substantial contribution to its preservation and appreciation"); Nash v. Nash, No. E2002-01597-COA-R3-CV, 2003 WL 21706297, at *3 (Tenn. Ct. App. July 18, 2003) (rejecting the husband's argument that the proof established that all of his post-marriage contributions to his 401(k) account were made to a single fund and that the other fund was therefore his separate property); and Norman v. Norman, No. M2001-02796-COA-R3-CV, 2003 WL 724677, at *6 (Tenn. Ct. App. Mar. 4, 2003) (holding that the balance in the husband's 401(k) account at his marriage was his separate property but that the remainder of the monies in the account as of the time of the parties' divorce was "to be divided equitably as marital property").

Clearly, this issue has caused confusion and consternation among the courts, litigants, and lawyers. We clarify today that 401(k) accounts held through a spouse's employer are "retirement or other fringe benefit rights relating to employment." Accordingly, net gains from any source accruing in such accounts during a marriage are *all* marital property within the meaning of the second clause of section 36-4-121(b)(1)(B),[15] and it is not necessary to consider the relative contributions of the parties to the increase in value. Also, we agree with the parties that the balances that existed in each of their 401(k) accounts as of the date of their marriage remain their separate property.[16]

## II. Transmutation of Husband's Premarital Balance

Husband originally sought permission to appeal in this case because the Court of Appeals determined that his *entire* 401(k) account, including the premarital balance, became marital property through the legal fiction of "transmutation." We agree with Husband that the Court of Appeals erred in its application of this concept.

This Court addressed the related doctrines of commingling and transmutation for the first time in Langschmidt and adopted the following explanation:

[S]eparate property becomes marital property [by commingling] if inextricably

---

[15]Because we reach this conclusion, it is not necessary to consider Wife's two alternative arguments that the entire net amount by which each account increased in value over the course of the marriage is marital property because both parties substantially contributed to the growth, or because of commingling.

[16]We emphasize that properly classifying property as separate or marital is only the first step in making a distribution under Tennessee Code Annotated section 36-4-121(a)(1). Once all of the spouses' property is classified, the marital property must be divided equitably on the basis of "all relevant factors" including those set forth specifically in Tennessee Code Annotated section 36-4-121(c). In the instant case, the parties agreed that an equitable division of the marital property was an equal division. An equitable division does not always require an equal division, however. Where one party is determined to hold significant separate property, that fact may be considered in the division of marital property. Id. at (c)(6); see Broadbent v. Broadbent, 211 S.W.3d 216, 220 (Tenn. 2006) ("The separate assets of each party are factors to consider in the equitable division of marital property."). Further, an appellate court's reversal of a trial court's property classification decisions may require a remand for a reevaluation of the overall distribution of marital property in order that it be equitable. See, e.g., Langschmidt, 81 S.W.3d at 750.

mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property . . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

81 S.W.3d at 747 (quoting 2 Homer H. Clark, The Law of Domestic Relations in the United States § 16.2 at 185 (2d ed. 1987)).

In the instant case, the trial court did not consider the doctrines of commingling and transmutation because it concluded correctly that the parties' 401(k) accounts were retirement (or other fringe benefit) rights and therefore marital property (excepting the balances that existed when the parties married). On appeal, the Court of Appeals disagreed with the trial court that the accounts were retirement rights and, accordingly, did address these doctrines.

The intermediate appellate court first observed that Husband,

as the party asserting that the appreciation of the pre-marital portion of the 401(k) accounts acquired during the marriage is not marital property, has the burden of establishing by a preponderance of the evidence that the assets in question can be segregated from contributions made with marital funds and gains.

Snodgrass, 2008 WL 836392, at *6. The court then determined that, because Husband could not demonstrate that the $180,000 withdrawal he made from his 401(k) account came solely from the marital property portion of the account,[17] the *entire* account "became marital property and subject to equitable division under the rationale of commingling and transmutation." Id. In so concluding, the Court of Appeals erred. With respect to this issue, we adopt, instead, the analysis used by the Court of Appeals in Avery v. Avery, No. M2000-00889-COA-R3-CV, 2001 WL 775604 (Tenn. Ct. App. July 11, 2001).

In Avery, the intermediate appellate court considered a husband's investment account that was his separate property. On occasion, the husband withdrew funds from this account and used them for marital purposes. The husband conceded that those withdrawn funds could themselves be considered to have been transmuted into marital funds. The wife argued that the husband's treatment of some of his separate money as marital money transmuted the *entire* account into marital property. The Court of Appeals disagreed with the wife's argument, stating,

---

[17]Both parties agree that the home purchased in part with the $180,000 is marital property.

[w]e agree with Husband, however, that the remainder of the money in his personal account . . . was not transmuted into marital property. We find no evidence of Husband's intent to gift the marital estate or Wife with the remainder of the money in his separate account, and no evidence that he commingled his separate account with jointly held property.

Id. at *9 (footnote omitted). In support of its holding, the Court of Appeals noted that, "[i]n addition to finding no basis for such a finding in the law, we think it would be bad policy for a court to hold that a party risks all of his or her separate property by spending some of it for the benefit of his or her family." Id. at *9 n.12.

We agree with the reasoning of the Avery court. At the time Husband withdrew the $180,000 from his 401(k) account, it totaled more than $2,000,000, including his premarital balance of approximately $54,000. Obviously, there was more than sufficient marital property in the account to support the withdrawal. There is no basis for concluding that Husband's withdrawal of the $180,000 for the marital home transmuted his premarital balance into marital property. Certainly, there is no proof that Husband intended that result. The Court of Appeals therefore erred in concluding that Husband's *entire* 401(k) account became marital property upon his withdrawal of the $180,000 for marital purposes. Husband is entitled to the balance that existed in his 401(k) account at the time he married as his separate property.

### III. Division of Pensions

Separate from the 401(k) issues, Husband also challenges the trial court's award to Wife of monies from Husband sufficient to guarantee both parties an equal number of dollars per month from the marital portion of their pensions. He contends that this calculation does not effectuate an equal division of their pensions because Wife's actuarial life expectancy is greater than his and she will therefore derive greater benefits over her anticipated longer lifetime.

In addition to offering its employees the opportunity to participate in the 401(k) Plan, Employer provided a defined benefits pension plan. At the time of the hearing, Husband and Wife were each drawing monthly benefits under this plan. The trial court determined that the marital portion of Husband's monthly benefit was $2,754.18 ("Husband's marital pension payment"). The trial court also determined that the marital portion of Wife's monthly benefit was $1,121.22 ("Wife's marital pension payment"). The trial court awarded Wife 50% of Husband's marital pension payment and awarded Husband 50% of Wife's marital pension payment. This division resulted in the trial court ordering Husband to pay Wife a sum certain every month in order to equalize the marital portion of the pension benefits. Husband now argues in his brief to this Court that "because the pension benefit is something that is expected to continue for the entire life of each party, on the unique facts of this case, the trial court should have looked at the total expected value of the pensions in determining what an equal split would be." Accordingly, Husband asks us to reverse the trial court's ruling on the pensions. Wife asks us to affirm the trial court's ruling.

17

Husband argues that

> the total *value* of the marital pension asset is the total *expected* payout amount, discounted to its net present value. Therefore, here, because the parties agreed that the benefit would be split equally, it is the total expected lifetime value, discounted to net present value, of both pensions that should be evenly split, not merely the check that arrives in the mail each month.

In making this argument Husband relies on Cohen, 937 S.W.2d at 831.

In Cohen, this Court was faced with deciding whether unvested pension benefits that had accrued during the marriage were marital property. Because we decided that they were, id. at 830, we then had to address the valuation issue, id. at 831. We reviewed several different methods of valuing uncertain future benefits, one of which is the "present cash value method." Id. That is the method which Husband asks us to apply in this case. In Cohen, we ultimately decided that the "choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances." Id.

The trial court in this case did not apply the present cash value method. On appeal, the Court of Appeals rejected Husband's argument that the trial court thereby erred. We also reject Husband's contention. Cohen dealt with valuing unvested and therefore *unmatured* pension benefits that *might* become payable at some point in the future but whose ultimate value was unknown. In such cases, an attempt to establish a present value may be appropriate. This case, in contrast, deals with benefits currently being paid. The benefits are known and there is, therefore, no need to establish their overall theoretical "present cash value" where the parties have, as here, agreed to an equal division. The parties will receive an equal payment each month. The fact that one will outlive the other, and thus receive more money, does not change our analysis. We reiterate that the equitable division of marital pension benefits is within the sound discretion of the trial court. Id. The decision will be upheld if it is not clearly unreasonable. In this case, the Court of Appeals found no abuse of discretion and agreed with the trial court that dividing equally the marital portion of the parties' monthly pension benefits was equitable. We agree. Husband is not entitled to relief on this issue.

## CONCLUSION

Because a 401(k) account is a "retirement or other fringe benefit right[] relating to employment," the trial court was correct in its ruling that the entire net increase in value of each of the parties' 401(k) accounts that accrued during the marriage is marital property. We therefore affirm the trial court's division of the parties' 401(k) accounts and reverse the Court of Appeals' rulings with respect to the parties' 401(k) accounts. We also affirm the rulings of the courts below with respect to the division of the parties' defined benefit pensions.

18

The costs of this cause are taxed to Husband and his surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE