FILED

03/25/2024

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 7, 2023

**DAVID E. TATE v. FELICIA M. TATE**

**Appeal from the Chancery Court for Rutherford County**
**No. 22CV-546      Darrell Scarlett, Judge**

———————————————————

**No. M2022-01438-COA-R3-CV**

———————————————————

This appeal arises from a divorce action following a short-term marriage. There were no children born of the marriage, and the only issue on appeal pertains to the classification of real property. At issue is the Wade Springs property, which the husband purchased using his separate property. He closed on the purchase of the Wade Springs property the day after the parties married, and the property was deeded in the husband's name only. Because the property was used as the marital residence during the two-year marriage and marital assets were used to maintain the property, the wife contended that the property became marital property by transmutation, commingling, or Tennessee Code Annotated § 36-4-121. The trial court found that the Wade Springs property was the husband's separate property at the time of purchase and it remained his separate property. The court further found that the wife's contributions to the property could easily be extracted and awarded her, inter alia, a cash judgment in the amount of her contributions to the home. Determining that the evidence does not preponderate against these findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Brock East, Murfreesboro, Tennessee, for the appellant, Felicia Tate.

Daryl M. South and David O. Haley, Murfreesboro, Tennessee, for the appellee, David Tate.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

David Tate ("Husband") and Felicia Tate ("Wife") were married on May 21, 2020. The next day, May 22, 2020, Husband closed on the purchase of 6438 Wade Springs Road

("the Wade Springs property"), where the parties lived for the duration of their marriage. To make the down payment on that property, Husband had obtained a bridge loan with his separate Central Valley Road property as collateral. Both the sales contract and warranty deed for the Wade Springs property were in Husband's name only. Moreover, Wife did not sign the promissory note for the property, nor did she have any obligations concerning Husband's loan.

After purchasing that home, Husband sold his Central Valley Road property, paid off the bridge loan, and received a balance of approximately $53,243, which he deposited in his separate personal account. Wife's name was never on this account.

Before the marriage, Wife owned a home on Greenway Drive, which she sold after the marriage and deposited the proceeds of approximately $186,000 into her separate account. Husband's name was never on this account.

On March 30, 2022, being less than two years into the marriage, Husband filed for divorce. In his petition, he averred that the marriage was of "very short duration" and that the parties had "maintained separate title and interest in both real property and financial accounts." He also alleged that Wife had "failed and refused to contribute to the acquisition, preservation, maintenance, or payment of the living expenses of the parties" and had "remained unemployed throughout the short term of the marriage." Husband also argued that it was "proper for the Court to find that this is a marriage of short duration and place each of the parties back in the financial position they maintained at the time of the parties' marriage."

Wife filed an answer and counter-petition, denying that the parties had completely maintained separate title and interest in real property and financial accounts. Wife also denied the allegation that she failed and refused to contribute to the maintenance of the property and that she had been unemployed throughout the marriage.

In Husband's Local Rule of Court 12.02[1] statement of issues and valuation of assets, he classified the Wade Springs property as his separate property, but in Wife's amended Rule 12.02 statement, she claimed "an equitable interest in the equity held in real estate purchased during the marriage and for marital home." She noted that the home was purchased for $450,000 on May 22, 2020, with Husband's down payment of $260,415.62 from the bridge loan. However, she argued that the home had "become marital property via the doctrines of comingling and transmutation, and all mortgage payments since have been made with marital funds by Husband and Wife."

At trial, Husband testified that he and Wife began the process of finding a home shortly after they were engaged, a year before they were married. He further testified that

---

[1] Rule 12.02 is a local rule of court for the Sixteenth Judicial District that includes Rutherford County, which applies to divorce proceedings.

they had selected the Wade Springs home together and intended to sell their homes and live there together.

Wife testified that throughout the marriage, Husband continually refused to put her name on the property and refused to open other joint accounts for the parties. Husband testified in agreement that it was never his intention to put Wife on the deed of the Wade Springs property, specifically that the decision not to make her a joint owner was intentional.

As to the value of the property, Wife testified that she had helped with building a shop on the property and other various maintenance items, but Wife concedes that the increase in the value of the home was because of market forces. A real estate appraiser later testified that the property's appraisal value at the time of trial was $646,390.

After the hearing, the court took the matter under advisement, delivered an oral ruling from the bench on September 2, and issued its written order on September 14. In its ruling, the trial court found that both parties had acted inappropriately and granted the divorce pursuant to Tennessee Code Annotated § 36-4-129(b).

The court further found that the Wade Springs property was Husband's separate property at the time of purchase and that it had not become marital property by transmutation, comingling, or Tennessee Code Annotated § 36-4-121(b)(2)(A)–(B). The court found that Wife's contributions could be easily extracted and were calculated at $13,780.60. Noting that Wife "acknowledged that the appreciation in the value of the home is a result of market forces," the court found, relying on *Harrison v. Harrison*, 912 S.W.2d 124 (Tenn. 1995), that "the increase in value in this cause of action is due solely to market forces and not anything that either party did subsequent to the marriage."

Each party was awarded his and her separate accounts, and Husband was found to be solely responsible for the debt of his BestBuy account. The court found to be separate property Wife's Camaro automobile that Husband gave to her as a wedding gift and Husband's Chevrolet truck that Wife gave to Husband as a Christmas gift, along with other household items that were found to be gifts.

Relying on *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988), the trial court found that because this was a marriage of relatively short duration, it was appropriate to "divide the property in a way that as nearly as possible places the parties in the same position they would have been in had the marriage never taken place." The court then defined the parties' marital property as "an increase in husband's retirement accounts in the sum of $10,103.57" and various lawn tools and household items. The court also found, "in the marital portion of the retirement accounts, that husband should receive the sum of $2,000 and the wife shall receive the sum of $8,103.57," with a greater amount going to Wife to compensate for damage to her vehicle caused by Husband. Wife was also awarded

a judgment against Husband in the amount of $13,780.60 for the financial contribution she made to the house.

Considering the statutory factors, the court declined to award Wife alimony, reasoning that Wife is "actually in a little better position than she was before the marriage because she has recovered her health and she has gotten a job."

This appeal followed.

## ISSUES

Wife only raises one issue on appeal: "Whether the trial court erred in its determination that the Wade Springs Road property was [Husband's] separate property."

While Husband has not raised any issue on appeal, he contends that Wife has waived her sole issue due to her failure to comply with Rule 7 of the Rules of the Court of Appeals of Tennessee.

## STANDARD OF REVIEW

"Questions regarding the classification of property as either marital or separate . . . are inherently factual." *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007) (citations omitted). Therefore, we review the trial court's findings "de novo upon the record . . . accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13. "After classifying the divorcing parties' assets as either separate or marital, the trial court must divide the marital estate equitably by weighing the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c)." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010). As such, this court "customarily gives great weight to decisions of the trial court in dividing marital estates and we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results from some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996) (citations omitted).

## ANALYSIS

### I. WAIVER OF ISSUE UNDER COURT OF APPEALS RULE 7

As a preliminary matter, we address Husband's argument that Wife has waived her sole issue on appeal because she failed to comply with Rule 7 of this court.

Rule 7 requires, "In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain,

in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto." Tenn. R. App. Ct. R. 7. The table is to list all property and debts considered by the trial court, including: "(a) all separate property, (2) all marital property, and (3) all separate and marital debts." *Id.*

Husband correctly states in his brief that Wife failed to file the Rule 7 table with her appellant's brief. Husband also correctly conveys the importance of this requirement, in quoting the *Kanski* court: "a table, in full compliance with Rule 7, is vital as this Court must consider the *entire* distribution of property in order to determine whether the trial court erred." *Kanski v. Kanski*, No. M2017-01913-COA-R3-CV, 2018 WL 5435402, at *6 (Tenn. Ct. App. Oct. 29, 2018) (citations omitted).

In filing his brief, however, Husband attached the required Rule 7 table, and Wife, in her reply brief, adopted the table as provided by Husband. In so doing, the parties have provided to this court the necessary information to consider the "entire distribution of property in order to determine whether the trial court erred." *Kanski*, 2018 WL 54354002, at *6.

Moreover, Wife is correct in asserting that, under Rule 1(b), this court "[f]or good cause . . . may suspend the requirements or provisions of any of these rules in a particular case on motion of a party, or on its own motion, and may order proceedings in accordance with its discretion." Tenn. R. App. Ct. R. 1(b). Wife respectfully requests that we suspend the requirement as stated in Rule 7. Under these particular circumstances, we agree with Wife. Thus, we find that Wife has not waived the issue she raised regarding the Wade Springs property.

## II. THE WADE SPRINGS PROPERTY

The sole issue presented for our review is whether the trial court erred in classifying the Wade Springs property as Husband's separate property. Wife specifically argues on appeal that "[t]he trial court erred in its determination that the Wade Springs Road property was not the subject of transmutation."

The division of a marital estate begins with classifying the parties' property as either separate or marital property. *See Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010). This is necessary because "separate property is not part of the marital estate and therefore not subject to division." *Id.* "Thus, before equitably dividing the marital estate, the trial court must identify all of the assets possessed by the divorcing parties as either separate or marital." *Id.*

"Marital property" is defined by statute as, generally, "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage." Tenn. Code Ann. § 36-4-121(b)(2)(A). "Separate property" is defined as "[a]ll

real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b)(4)(A). Simply stated, separate property is property that is not "marital property." *See Jacobsen v. Jacobsen*, No. M2012-01845-COA-R3-CV, 2013 WL 1400618, at *9 (Tenn. Ct. App. Apr. 5, 2013).

Two rebuttable presumptions provide a starting point for classifying property as separate or marital. *Watt v. Watt*, No. M2014-02565-COA-R3-CV, 2016 WL 1730659, at *6 (Tenn. Ct. App. April 27, 2016). First, there is a presumption that assets acquired by either spouse before the marriage are separate property. *Id.* (citing *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *4 (Tenn. Ct. App. Sept. 1, 2006); Tenn. Code Ann. § 36-4-121(b)(2)(A)). That said, property that began as separate property can be converted into marital property by commingling or transmutation. *See Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002).[2]

Second, "assets acquired by either spouse during the marriage are presumed to be marital property." *Watt*, 2016 WL 1730659, at *6 (citations omitted). "This presumption may be rebutted by presenting evidence [that] the property falls into one of the categories listed in Tenn. Code Ann. § 36-4-121(b)(2)(B)–(F)[3]." *Id.* (citing *Fox*, 2006 WL 2535407, at *4). "A party asserting that an asset acquired during the marriage is separate property has the burden of proving by a preponderance of the evidence that the asset is separate property." *Owens v. Owens*, 241 S.W.3d 478, 485–86 (Tenn. Ct. App. 2007) (citations omitted).

Here, the trial court found that the Wade Springs property was Husband's separate property at the time of marriage, reasoning:

> The Court finds that the husband owned a home on Central Valley Road prior to the marriage. The Court finds that the Central Valley Road property was not sold at the same time the Wade Springs Road property was acquired, so the husband acquired a bridge loan, or HELOC, using the Central Valley Road property as collateral. The Court then finds that a portion of said HELOC, or bridge loan, was used to pay[ ]off his preexisting debt, and the majority was used as a down payment on the purchase of the Wade Springs Road property, which is titled solely in husband's name.

---

[2] Under the theory of commingling, separate property becomes marital property if it is "inextricably mingled with marital property or with the separate property of the other spouse." *Smith*, 93 S.W.3d at 878 (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (1987)). Transmutation occurs when separate property is treated in a way that gives evidence "of an intention that it become marital property." *Id.*

[3] Separate property is now defined under Tennessee Code Annotated § 36-4-121(b)(4)(A)–(F).

The Court finds that it is clear that the Wade Springs Road property was in consideration of the terms of the statute, property acquired in exchange for property acquired before the marriage, and at that point was Mr. Tate's separate property.

Husband closed on the Wade Springs property one day after the date of marriage, using funds from a loan with his separate property as collateral. Separate property is statutorily defined as: "[p]roperty acquired in exchange for property acquired before the marriage." Tenn. Code Ann. § 36-4-121(b)(4)(B). Accordingly, the Wade Springs property was acquired in exchange for the Central Valley Road property that Husband owned prior to the marriage. Moreover, the Wade Springs property was separately titled in Husband's name only. Thus, we affirm the trial court's finding that the Wade Springs property was Husband's separate property when it was acquired on the day following the parties' marriage.

Wife argues, however, that even if the Wade Springs property was Husband's separate property at the outset of the marriage, the property became marital property through the doctrine of transmutation.

Our Supreme Court has adopted the following explanation of the two doctrines by which separate property becomes marital property, transmutation and commingling:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Snodgrass v. Snodgrass*, 295 S.W.3d 240, 256 (Tenn. 2009) (quoting *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)) (alterations in original).

While Wife testified that she intended to combine accounts and assets, it is undisputed that the parties retained separate assets and financial accounts throughout the course of the marriage. For example, upon selling her home that she owned prior to the

marriage, Wife kept the net proceeds of $186,000 in an account separate from Husband throughout the course of the marriage. Likewise, Husband kept his bank accounts and earnings separate from Wife throughout the course of the marriage.

While being questioned by Husband's counsel at trial, Wife testified as follows:

Q. Those two accounts -- all of Sally's money here and all of Tommy's money here, those two accounts have never touched each other, have they?

A. And that's been one of our biggest faults in our marriage, sir, because we've not been one.

Q. That's right.

A. And I complained and complained.

Q. Y'all never put those -- commingled those together as a married couple?

A. No, sir. He's a very controlling man.

Q. If you'll -- I appreciate that. If you'll try to answer my questions. Neither you or Mr. Tate ever commingled those monies in any way, have you?

A. No, sir. Just in the house he had and I added to it by doing things I done.

Wife testified specifically as to the contributions she had made to the improvement of the Wade Springs property—painting, flooring, ceiling fans, and landscaping—but conceded that the increase of the home's value was likely due to market forces. She also noted that her name was on the utilities, but Husband paid them. Husband paid for the construction of a shop on the property but testified that Wife had paid for electricity to be run to it, offering into evidence checks and invoices with exact totals of those and other contributions.

Wife further testified that she wanted her name on the deed for the Wade Springs property, but Husband continually refused to add her. It is undisputed that Wife's name has never been on the deed to the Wade Springs property, and Husband testified that he never intended to put her name on the deed.

The trial court found that

[W]ife did contribute financially to the house and to the later construction of the shop; however, her financial contributions are determinable as evidenced by the checks received as evidence, and they are not, as required, inextricably

- 8 -

intertwined with the separate property. . . . The Court finds that said contributions can be easily extracted, and . . . therefore the property did not become marital property as a result of comingling.[4]

As for transmutation, as stated above, there is a rebuttable presumption of marital property created "when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Snodgrass*, 295 S.W.3d at 256. Wife clearly expressed her intent for the Wade Springs property to become marital. However, the presumption here is "rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate." *Snodgrass*, 295 S.W.3d at 256.

The trial court found that "not only did husband not evidence any intention to make a gift of this separate property to the marriage, he acted in such a way by refusing to put her name on the title despite requests, to evidence his intention that the property remained his separate property."

Finding that the evidence preponderates in favor of the trial court's determination that the Wade Springs property did not become marital property due to commingling or transmutation and remained separate property at the time of divorce, we affirm the decision of the trial court.

## In Conclusion

The decision of the trial court is hereby affirmed, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against Wife, Felicia Tate, for which execution may issue.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[4] The trial court also made the determination that the marital property consisted of "an increase in husband's retirement accounts in the sum of $10,103.57, the Milwaukee hedge trimmer, Milwaukee weed eater, steel brush cutter, 75inch Samsung TV, surround sound system, humidifier, two air purifiers, the desk and bookshelf, three TV wall mounts, washer and dryer, refrigerator, dishwasher, and microwave." As such, the trial court awarded the humidifier, air purifier, and office furniture to Wife. For the $10,103.57 marital portion of Husband's retirement account, Husband was to receive $2,000 and Wife $8,103.57, to compensate Wife for damage to her vehicle determined to be caused by Husband. Wife was further awarded "a judgment against [Husband] in the sum of $13,780.60 representing the financial contribution she made to the house and shop that the Court has found to be his separate property." Neither party challenges any of these rulings in their Statement of the Issues. "The appellate court may treat issues that are not raised on appeal as being waived." *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009) (citing Tenn. R. App. P. 13(b)). Thus, we do not discuss these rulings in this opinion.