IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2018 Session

## ERIKA LOUISE (BROWN) DEWALD v. BAYA PAUL DEWALD

**Appeal from the General Sessions Court for Wilson County**
**No. 2014-DC-48     John Thomas Gwin, Judge**

_____

### No. M2017-02158-COA-R3-CV

_____

A husband appeals the trial court's division of marital assets and denial of attorney's fees. Both parties sought a divorce. Prior to trial, the parties stipulated that the husband was entitled to a divorce based on the wife's admitted adultery. The parties also stipulated to the value of the husband's premarital interest in his 401(k) retirement account. As to the division of marital assets, the parties stipulated that the husband would receive the marital home, and the wife would receive another piece of real property. The parties stipulated to the values of all remaining assets and debts but not to their division, and the wife waived any claims to alimony. After a four day bench trial, the trial court granted the husband a divorce and approved a permanent parenting plan which designated him as primary residential parent for the parties' one child. In addition, the trial court classified the parties' assets and divided the remaining marital estate, awarding fifty-four percent (54%) of the marital estate to the wife and forty-six percent (46%) to the husband, and declined to award either party attorney's fees. The husband takes issue on appeal with the manner in which the trial court divided the marital estate and with the trial court's decision to not award him any attorney's fees. We affirm the trial court's division of the parties' marital estate, as well as the trial court's decision not to award the husband any attorney's fees. We also decline to award the wife her attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and JOHN W. MCCLARTY, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Baya Paul Dewald.

Anthony Ensley Hagan, Jr., Lebanon, Tennessee, for the appellee, Erika Louise Dewald.

**OPINION**

Erika Louise Dewald ("Wife") met Baya Paul Dewald ("Husband") on the internet in November 2001. Wife was 19 years old at the time and had just started her first year at Milligan College in east Tennessee. Husband was 27 and lived in Antioch, Tennessee. Within a few weeks after meeting, Wife dropped out of school and moved in with Husband. The couple married six months later, in July 2002. Shortly after marrying, Wife disclosed to Husband that she had a considerable amount of credit card and school debt, which Husband ultimately paid. The couple has one son who was born in April 2004.

Wife worked outside the home on and off throughout the marriage, choosing to stay home or volunteer at the couple's church the remainder of the time. Wife obtained her real estate license, but it has since lapsed. She now works for EMF Telcom as a project manager earning approximately $46,800 a year. Husband is college-educated and works in the finance industry for Morgan Stanley making approximately $132,600 a year.

Wife admitted that she admired Husband's "work ethic and financial ability," and entered the marriage with "literally, nothing but the clothes on her back." Husband, however, came into the marriage owning real property located on Fieldstone Drive in Antioch and had already accumulated a sizable 401(k) retirement account. The couple acquired several other assets during the marriage, including the marital home located on Adelaide Court in Mount Juliet and two other homes they used as rental properties; one located on Timber Oak Drive in Mount Juliet and the other located on Priest Woods Drive in Nashville.

The Dewalds' relationship was tumultuous from the start and was peppered with Wife's periodic statements of her desire to divorce throughout the course of the fourteen-year marriage. The breaking point for the marriage came on March 2, 2014, when an argument escalated into a physical altercation and Wife was arrested for domestic assault. As a condition of her bond, Wife was prevented from returning to the marital home. Approximately two weeks later, on March 17, 2014, Wife filed for divorce, alleging grounds of irreconcilable differences and inappropriate marital conduct. After first attempting to reconcile, Husband filed a counter-complaint for divorce alleging the same grounds. Husband was granted temporary primary parental responsibility for the parties' child and was ordered to pay Wife $5,000 to help her obtain housing and $1,075 per month in temporary support.

In an order entered on May 20, 2014, the trial court ordered Husband to vacate the marital residence on a specified date for a certain length of time to allow Wife to enter

the residence to collect a court-approved list of household items.[1] The order stated that "[b]oth parties [were] restrained and enjoined from speaking directly to the other by any means. All communications between the parties shall go through their respective counsel. A violation of this order will result in the offending party being held in criminal contempt of court."

On June 20, 2014, Husband filed a petition for contempt based on Wife's alleged actions when she entered the marital home to retrieve her designated property. Husband alleged that Wife removed items that were not designated for removal, left prohibited communications to Husband at the marital residence, and did significant damage to the marital home while in the process of removing furniture. Additionally, Husband filed a motion on November 24, 2014, asking the court to impose Rule 11 sanctions on Wife and Wife's attorney alleging that an allegation contained in Wife's motion for temporary support lacked any evidentiary support. In an order entered on April 1, 2015, the trial court reserved judgment on Husband's motion for contempt until the final hearing.

In the interim, on November 24, 2014, the trial court entered an order ordering both parties to submit to a psychological evaluation with each party to be responsible for the costs associated with the exam.

Trial commenced on February 22, 2016, in Wilson County General Sessions Court and continued over four nonconsecutive days of testimony. On the morning of the first day of trial, the parties agreed to multiple stipulations, including that Husband was entitled to a divorce based on Wife's admitted adultery, and that Wife waived all claims for alimony. The parties agreed that Husband would receive $40,000 of his 401(k) retirement account as separate, premarital property. As to the division of marital assets, the parties stipulated that Husband would receive the marital home on Adelaide Court with a fair market value of $290,000, and Wife would receive the "Timber Oak" rental property with a fair market value of $255,000. The parties stipulated to the values of all remaining assets and debts but not to their division.

In an order entered on August 2, 2016, the trial court granted Husband a divorce based on Wife's stipulated adultery and approved the parties' permanent parenting plan which designated Husband as the primary residential parent of their twelve-year-old son. Additionally, the trial court classified the parties' assets and divided the marital estate, awarding Wife approximately fifty-four percent (54%) of the marital estate for a total of $455,586.13 and Husband approximately forty-six percent (46%) of the marital estate, totaling $385,288.41.

---

[1] Because the parties were unable to agree on a list of items, the trial court attached a list to its order, specifically enumerating the items Wife could retrieve from the marital home.

Specifically, the trial court awarded to Wife the "Priest Woods" rental property which had a fair market value of $93,000, a 2001 Toyota Camry, a 2010 Volkswagen GTI, and a Discover checking account. The trial court found that Wife made several unauthorized purchases using marital funds during the pendency of the divorce and credited these to her as "pendente lite expenditures." A $40,000 portion of Husband's Morgan Stanley 401(k) retirement account had previously been stipulated as Husband's premarital interest in the account. The trial court divided the remaining balance of the 401(k), valued at approximately $190,000, and awarded $104,444.81 to Wife and $85,454.85 to Husband. Husband was awarded the "Fieldstone" rental property with a fair market value of $95,000 as his separate, premarital property, and additionally the trial court awarded Husband a 2009 Toyota Camry, a Morgan Stanley brokerage account, and three checking accounts.

Regarding marital debt, the "Fieldstone" property had a debt of $31,112.89 secured against the property. The trial court ordered Wife to pay $15,723.46 as her portion of the debt to Husband, and ordered that Husband would be responsible for the debt secured by the "Fieldstone" property. All other debts encumbering property were awarded to the spouse receiving the property.

In making this decision, the trial court took into account the duration of the marriage and the court noted, *inter alia*, that while the parties' ages and ability to engage in gainful employment were similar, Husband earned almost three times more than Wife and she was economically disadvantaged compared to Husband. At the time of trial, Husband was 41 and Wife was 33 years old. The court found that Wife did not make significant contributions to the maintenance and appreciation of Husband's separate premarital assets, and that at the time the parties married, Husband had already accumulated equity in real estate and retirement/investment accounts.

Regarding attorney's fees, both parties blame the other of litigious conduct and delay tactics which they claim have inflated their attorney's fees. The record reflects that Husband had at least five different attorneys representing him throughout this case, which Wife alleges led to higher attorney's fees on his part. The trial court declined to award attorney's fees to either party, finding that Wife "has already received more than ample distribution for her attorney's fees," adding, "If anything, she owes attorney's fees to [Husband]." However, the trial court opined that Wife did not have the ability to pay Husband's attorney's fees without negatively impacting the parties' son.

Husband timely filed his notice of appeal on August 5, 2016, and subsequently filed a motion for stay to preserve marital assets pending the sought-after modification of property division. The parties filed competing motions to alter or amend, seeking in part to clarify the division of certain personal/marital property and debt and for a ruling on Husband's contempt petition. At a hearing on August 25, 2016, the parties agreed that Wife could take possession of both the "Priest Woods" and "Timber Oak" properties. In

an order filed September 20, 2016, the trial court found that Husband had not met his burden on the contempt allegations, nor did Husband prove that he owed unsecured debt to his brother and as such, it was not marital debt. Wife subsequently filed two additional motions to compel, one requiring Husband to turn over lease information pertaining to the two rental properties the court awarded her, and the other alleging Wife had not received the rental income as previously ordered. Husband filed responses and both parties sought attorney's fees. Husband then filed a motion to require Wife to deposit sale proceeds from the sale of the "Timber Oak" property, or alternatively, to prohibit its sale. Wife responded, noting that Husband had entered into a lease renewal with a tenant six weeks after the final order awarding her the property. Wife filed an additional motion to compel executed quitclaim deeds on the rental properties awarded to her, as she was in the process of refinancing to pay off her portion of the property's debt owed to Husband.

In an order filed on November 28, 2016, the trial court addressed the outstanding post judgment motions. The trial court ruled that if Wife decided to sell either the "Priest Woods" or "Timber Oak" properties, she would deposit $120,000.00 with the clerk of court pending the appeal and ordered the parties to exchange quitclaim deeds on their respective properties. Wife withdrew her motion to compel rental proceeds on the condition that Husband provide her with documentation and receipts. The trial court reserved the issue of attorney's fees on the post judgment litigation.

On September 22, 2017, this court dismissed the appeal because the trial court's order was not final in that it failed to fully adjudicate Husband's petition for contempt and motion for sanctions. The trial court entered a final order on October 24, 2017, denying Husband's petition and motions. This appeal followed.

ISSUES

Husband raises two issues on appeal, which we rephrase as follows:

1. Whether the trial court inequitably divided the marital property?
2. Whether the trial court abused its discretion in failing to award Husband his attorney's fees.

Wife seeks an award of her attorney's fees on appeal.

ANALYSIS

I.  DIVISION OF MARITAL PROPERTY

Husband argues on appeal that "(1) Wife made little or no contribution to the marriage or to the accumulation of marital property; (2) Wife earns a respectable income from her employment thereby allowing a reasonable standard of living; (3) the equitable

- 5 -

division of marital property suggested by Husband provides a generous nest egg for retirement upon which the relatively young Wife can build; and (4) the remaining statutory factors support Husband's proposal for a division of marital property in his favor." We disagree.

The division of a marital estate begins with the classification of the parties' property as either separate or marital property. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010); *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). This is necessary because separate property is not part of the marital estate; therefore, a party's separate property is not subject to division. *Id*. (citing *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995)). "Thus, before equitably dividing the marital estate, the trial court must identify all of the assets possessed by the divorcing parties as either separate or marital." *Id*. (citing *Snodgrass*, 295 S.W.3d at 246).

"Marital property" is defined in Tenn. Code Ann. § 36-4-121(b)(1)(A)-(E). "Separate property" is defined in Tenn. Code Ann. § 36-4-121(b)(2)(A)-(F). *See Jacobsen v. Jacobsen*, No. M2012-01845-COA-R3-CV, 2013 WL 1400618, at *9 (Tenn. Ct. App. Apr. 5, 2013) (generally stating that separate property is property that is not marital property). After classifying the divorcing parties' assets as either separate or marital, the trial court must then divide the marital estate equitably by weighing the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c) **without regard to fault** on the part of either party. *Larsen-Ball*, 301 S.W.3d at 231 (emphasis added); Tenn. Code Ann. § 36-4-121(a)(1). Factors to consider in dividing the marital estate include:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a

purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c). Section 36-4-121(a)(1) also requires an equitable, but not necessarily an equal, division of marital property. *Larsen-Ball*, 301 S.W.3d at 231; *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). Further, because trial courts have broad discretion when dividing the marital estate, the division of marital property is not a mechanical process. *Larsen-Ball*, 301 S.W.3d at 234. Rather, trial courts must weigh the most relevant factors in light of the facts of each individual case. *Id.*

A trial court's division of marital property is a factual issue that we review de novo upon the record with a presumption of correctness. Tenn. R. App. P. 13(d); *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997). Trial courts have wide discretion in how they divide marital property, and therefore, marital property divisions are given great weight on appeal. *Id.* (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)). The trial court's decision on the distribution of marital property is presumed correct unless the evidence preponderates otherwise. *Id.*; Tenn. R. App. P. 13(d); *Wallace*, 733 S.W.2d at 107. Our role as the appellate court "is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable." *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (citing *Jolly v. Jolly*, 130 S.W.3d 783, 785–86 (Tenn. 2004); *Gratton v. Gratton*, No. M2004-01964-COA-R3-CV, 2006

WL 794883, at *7 (Tenn. Ct. App. Mar.28, 2006)); *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998)).

Here, the trial court made the following findings of fact in making its division of marital property:

(1) The duration of the marriage is approximately fourteen years.

(2) The parties' ages and ability to engage in gainful employment are similar. [Husband] earns almost three times more than Wife.

(3) [Wife] gained some training and education during the marriage, which will eventually improve her earning capacity. There is no proof in the record which would enable the Court to place a monetary value on this.

(4) [Wife] is currently economically disadvantaged compared to [Husband]. [Husband] will have a superior ability for the future acquisition of assets, for the reasonable future.

(5) [Wife] claims to have made significant contributions to the maintenance and appreciation of [Husband]'s separate, premarital real estate assets. The Court finds that this is not the case. Most of those duties were handled, for a fee, by a property management company.

(6) The value of the separate property of each party is set out in the Court's findings made on the face of Trial Exhibit 6A.

(7) At the time of marriage, [Husband] had already accumulated good equity in real estate and retirement/investment accounts. [Wife] had, literally, nothing but the clothes on her back.

(8) The economic circumstances of each party at the time the division of property is to become effective is basically described by the parties' relative earned incomes as of the time of trial.

(9) There is no relevant proof in the record as to tax consequences to either party.

(10) The amount of social security benefits available to each spouse is reflective of their respective employment histories.

In particular, the trial court considered that the parties were married for approximately fourteen years, Tenn. Code Ann. § 36-4-121(c)(1), and that at the time of trial, Husband was 41 and Wife was 33 years old. Tenn. Code Ann. § 36-4-121(c)(2). Significantly, while the trial court observed that the parties' ages and ability to engage in gainful employment were similar, the trial court noted that Husband earned almost three times more than Wife. Tenn. Code Ann. § 36-4-121(c)(2). Additionally, the trial court pointed out that Wife was currently economically disadvantaged compared to Husband, and that for the reasonable future, Husband would have a superior ability to acquire future assets and income. Tenn. Code Ann. § 36-4-121(c)(4). Also significantly, the trial

court noted that at the time the parties married, Husband had already accumulated quite a bit of wealth through equity in real estate and retirement accounts, but Wife had "literally, nothing but the clothes on her back." Tenn. Code Ann. § 36-4-121(c)(7).

After considering all of the above factors, the trial court classified the parties' assets and divided the marital estate, awarding Wife approximately fifty-four percent (54%) of the marital estate for a total of $455,586.13 and awarded Husband approximately forty-six percent (46%) of the marital estate, totaling $385,288.41.

The only significant assets at issue on appeal are the "Priest Woods" rental property with a fair market value of $93,000 and the balance of Husband's Morgan Stanley 401(k) retirement account valued at approximately $190,000. The parties had already stipulated before trial to the division of two of the four pieces of real property, agreeing that Husband would receive the marital home on Adelaide Court, and Wife would receive the "Timber Oak" rental property. The third piece of real property, "Fieldstone Drive," the trial court easily determined to be Husband's separate premarital property, leaving only the "Priest Woods" rental property to the trial court's discretion to divide. In awarding Wife the "Priest Woods" property, the parties each walked away from the divorce owning two pieces of real property. Wife kept her vehicles, checking and credit card accounts (and the debt that went along with them), and Husband was similarly awarded his vehicle, his Morgan Stanley brokerage account, and three checking and credit card accounts along with any debt that they carried.

With regard to the division of the Morgan Stanley 401(k) retirement account, $40,000 of that account was stipulated as Husband's premarital account value. In dividing the remaining balance of the account, the trial court awarded fifty-five percent (55%) to Wife and forty-five percent (45%) to Husband. This award parallels the overall percentage of marital property awarded to each of the spouses.

In considering the relevant factors as the trial court obviously did, we find that the trial court's division of the marital estate is consistent with the statutory factors enumerated in Tenn. Code Ann. § 36-4-121(c) and is supported by the evidence. *Larsen-Ball*, 301 S.W.3d at 231; *Robertson*, 76 S.W.3d at 341. Accordingly, we will not disturb the trial court's division of marital property.

## II. ATTORNEY'S FEES

### A. Attorney's Fees at Trial

Husband asserts that the trial court abused its discretion when it failed to award Husband his attorney's fees at trial.

In a divorce action, an award of attorney's fees constitutes alimony in solido. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (citing Tenn. Code Ann. § 36-5-121(h)(1)). When determining whether to award attorney's fees as alimony in solido, the trial court must consider the relevant factors regarding alimony set forth in Tenn. Code Ann. § 36-5-121(i). *Id.* Such an award is only appropriate when the spouse seeking it lacks sufficient funds to pay his or her legal expenses or would be required to deplete his or her resources in order to pay them. *Id.* The decision of whether to award attorney's fees is within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent an abuse of discretion. *Id*.

Here, the trial court's final order addressed the issue of attorney's fees as follows:

11. … [T]he Court finds that [Wife] has already received more than ample distribution for her attorney fees. If anything, she owes attorney fees to [Husband]. The Court notes that while [Husband] had as many as five different attorneys in this matter, it was [Wife]'s adultery; her failure to be truthful during discovery; and her failure to be forthcoming with Dr. Freeman that resulted in such large fees.
12. [Wife] is without the ability to pay attorney fees to [Husband] without negating her ability to be financially self-sufficient after this divorce, which in turn would not be in the best interests of the parties' son. Accordingly, each party shall be responsible for the balance of their own attorney fees…

In reviewing the record on appeal, we note that neither Husband nor Wife was without fault in driving up unnecessary attorney's fees in this case. Wife remained evasive about committing adultery until the eleventh hour before trial, when she finally stipulated to the adultery. Husband, therefore, incurred attorney's fees in conducting discovery to prove what Wife ultimately admitted. Husband, on the other hand, retained as many as five different attorneys throughout the course of litigation, which also contributed to the cost of attorney's fees, and both parties filed numerous pre and post-trial motions. Therefore, we defer to the broad discretion afforded to the trial court and affirm the denial of an award of attorney's fees to Husband.

### B. Attorney's fees on Appeal

Wife seeks to recover her attorney's fees incurred on appeal. Whether to award attorney's fees on appeal is within this court's sole discretion. *Wills v. City of Memphis*, 457 S.W.3d 30, 51 (Tenn. Ct. App. 2014) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). When considering a request for attorney's fees, we will consider "the requesting party's ability to pay, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other relevant equitable factors." *Culbertson v. Culbertson*, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014) (citing *Moran v. Willensky*,

339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)). After considering these factors, we exercise our discretion and decline to award Wife her attorney's fees incurred on appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Baya Paul Dewald.

_____
FRANK G. CLEMENT JR., P.J., M.S.