IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 7, 2019 Session

## JENNIFER ANN SPERGL v. STEPHEN PHILLIP SPERGL

**Appeal from the Chancery Court for Williamson County**
**No. 44514     Joseph A. Woodruff, Judge**

_____

### No. M2018-00934-COA-R3-CV

_____

In this divorce action, Wife appeals the trial court's action in classifying as Husband's separate property the appreciation in value of shares of stock, arguing that the appreciation in value was marital property.  Upon our review of the record, we conclude that the evidence does not show that Wife substantially contributed to the preservation and appreciation in value of the stock; accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Todd G. Cole and Crystal M. Etue, Brentwood, Tennessee, for the appellant, Jennifer Ann Spergl.

Donald Capparella, Nashville, Tennessee, for the appellee, Stephen Phillip Spergl.

## OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

Jennifer Spergl ("Wife") and Stephen Spergl ("Husband") were married in January 2004. No children were born of the marriage, although Husband's two children from a previous marriage lived with the couple.  Wife filed a complaint for divorce in September of 2015, alleging irreconcilable differences and inappropriate marital conduct as grounds. Husband answered, denying those grounds; he later amended his answer, admitting that he had been guilty of inappropriate marital conduct, and asserting a counterclaim for divorce on the ground of inappropriate marital conduct.

A trial was held in January of 2018, at which Wife proceeded *pro se*.[1] The parties stipulated to the entry of divorce pursuant to Tennessee Code Annotated section 36-4-129, as well as to the classification and valuation of most of the marital assets. Pertinent to this appeal, the trial court was called upon to determine the extent to which shares of United Parcel Service stock that Husband received from his father prior to the marriage, as well as stock acquired after the marriage and the appreciation in value of the stock, was separate property or marital property. In this regard, Husband testified that his Father gave him 1200 shares of Class A UPS stock in the 1990s, and that his Father later, before the marriage, gave him 8,400 shares of Class B stock. Husband testified that at the time of the marriage, the shares of stock were worth $73 each, and that, at the time of trial, the stock were trading at $132.76 per share.[2] Husband testified that the increase in value was "absolutely . . . market driven." Husband testified that the Class B shares are held in an account at Merrill Lynch and that the shares secure a line of credit that permits him to borrow up to half of the value of the stock. Husband also testified that both classes of stock paid dividends; that through a dividend reinvestment program, the dividends from the Class A shares were used to purchase additional shares of Class A stock, such that at the time of trial, an additional 531 shares of Class A stock had been purchased; and that the dividends from the Class B stock were used to pay down the line of credit.[3]

The court entered a Memorandum and Order, later amended,[4] in which it made

---

[1] In her brief on appeal, Wife states that when her former counsel presented a motion to withdraw, a continuance was requested for Wife to secure other counsel; the court denied the motion. Husband argues on appeal that Wife has not properly raised on appeal whether the trial court erred in failing to continue the trial. There is no motion to continue in the record, and Wife does not raise the denial of a continuance as an issue on appeal. She has waived any issue with respect to this matter. *See Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015) (citing Tenn. R. App. P. 27(a)(4)).

[2] Trial Exhibit 1, Husband's Proposed Division, showed that at the time of trial the 8400 shares of Class B stocks were valued at $1,115,184.00, and the 1731.31 shares of Class A stocks were valued at $229,848.71. Exhibit 7, Wife's Proposed Division of the Estate, showed the class B shares as having a value of $1,113,956, and the Class A shares as having a value of $229,676.00.

[3] Exhibit 4 showed that the "dividend income" from both classes of stock from 2004 through 2016 totaled $267,296, and Exhibit 21, which Wife prepared from the parties' tax returns, showed a similar amount of dividends paid ($267,231) for that same time period.

[4] Wife moved to amend the initial Memorandum and Order, seeking to have the court correct a clerical error in the address of one of the parties' real property assets, address Husband's dissipation of marital assets by awarding her an additional $25,000, and reclassify her IRA as separate property, and then redistribute the marital property accordingly. Husband responded, and after a hearing, the court granted the motion in part and denied it in part and entered an Amended and Restated Memorandum and Order on April 26, 2018. The disposition of the motion to amend is not at issue on appeal, and the court's findings and conclusions relating to the UPS stock were unchanged in the amended order.

the following findings of fact and conclusions of law relative to the UPS stock:

A. The UPS Stock:

In the 1990's, several years before the marriage, Husband received two separate gifts from his father of UPS common stock. Specifically, Husband received 8400 shares of Class B common stock, and 1200 shares of Class A common stock. The stock has been continuously held in Husband's name, first in an account in the custody of Ameritrade, then Compu-Share for the Class A stock, and Merrill Lynch for the Class B shares.

Both classes of stock pay dividends. Husband has applied all of the dividends from the Class A shares to a dividend reinvestment program offered by UPS. Since the date of the marriage, this reinvestment activity has acquired an additional 531 shares, so that at the time of trial, Husband holds 1731 shares of Class A stock in his Compu-Share account. Husband did not reinvest the dividends from the Class B shares. Instead, he used all of the dividends paid by the Class B shares to pay down on a line of credit secured by the Class B shares. Husband used his draws on this line of credit for supporting the Parties' lifestyle. This included purchasing income producing real estate, a private school education for Husband's children, purchasing automobiles, and other legitimate family purposes. Husband also used the line of credit draws for personal consumption of alcohol, drugs, and other non-familial pursuits in service of his addictions.

The closing value of UPS common stock on the date the Parties submitted their joint statement of marital assets and liabilities was $132.76 per share. Applying the definition of "marital property" set out in Tennessee Code Annotated § 36-4-121(b)(1), the Court finds Wife made a substantial indirect contribution as a wage earner, homemaker, and parent to the preservation of the Class A shares. Without Wife's earned income as a real estate sales professional, homemaker, and parent to Husband's children (Wife's step-children), Husband would have been required to use the dividends paid by the Class A shares to support the family's lifestyle just as he did with the dividends from the Class B shares. Accordingly, the Court concludes 531 shares of the Class A stock is marital property and subject to equitable division in this divorce proceeding.

The Court concludes the dividends from both classes of UPS stock were marital property when received during the marriage. The dividends from the Class B shares were either used for marital purposes, or were dissipated by Husband. The dividends from the Class A shares were

3

converted into other shares of UPS stock and, thus, were marital property when acquired. The Court's determination of equitable division of all marital property is set out separately in this Memorandum and Order.

(Footnote omitted.)

The court held that the 8,400 shares of UPS Class B stock, which it valued at $1,115,184.00, and the 1,200 shares of UPS Class A stock, which it valued at $159,240.00,[5] were Husband's separate property. In the division of the assets, the court held that the 531 shares of Class A stock acquired during the marriage through the dividend reinvestment program had a value of $70,463.70 and were marital property, and divided them equally. The court held that the dividends from the Class B stock "were either used for marital purposes or dissipated by Husband." The court found that Husband had spent $50,000 "servicing his addictions" and awarded Wife $25,000, or half of the $50,000 of marital funds dissipated by Husband during the marriage. Wife timely appealed, challenging the trial court's ruling that the UPS stock was Husband's separate property.

## II.    ANALYSIS

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). The first two issues raised by Wife require us to consider whether the increase in value in the shares of stock Husband owned prior to the marriage became marital property. Our resolution requires us to construe and apply Tennessee Code Annotated section 36-4-121(b) to the facts presented; the pertinent portions of the statute read:

> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . . All marital property shall be valued as of a date as near as possible

---

[5] In the Amended Order, the Class A stock is valued at $159,240.00, but in the "Award to Husband" column for this item, the value of $159,284.00 is used. It is not clear from the order or the briefs whether the $44 difference is real or is a scrivener's error.

4

to the date of entry of the order finally dividing the marital property;

(B)(i) "Marital property" includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation;

\*\*\*

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine;

\*\*\*

(2) "Separate property" means:
(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent; . . .

Tenn. Code Ann. § 36-4-121(b).

"The classification of particular property as either separate or marital is a question of fact to be determined in light of all relevant circumstances." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009). Thus, we review the trial court's classification using the familiar standard of review in Rule 13(d) of the Tennessee Rules of Appellate Procedure.

In *Keyt v. Keyt*, the Supreme Court was called upon to apply Tennessee Code Annotated section 36-4-121(b)(1)(B)(i) to the appreciation in value of separately-owned stock and explained that:

[I]ncreases in the value of separate property during a marriage will not be

5

considered marital property unless both parties substantially contributed to the appreciation in the value of the property. While these contributions may be either direct or indirect, they must satisfy two requirements. First, the contributions must be real and significant. Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property. Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact.

*Keyt*, 244 S.W.3d 321, 328–29 (Tenn. 2007) (citations omitted). A spouse's contributions "need not, however, be monetarily commensurate to the appreciation in the separate property's value, nor must they relate directly to the separate property at issue." *Yates v. Yates*, No. 02A01-9706-CH-00122, 1997 WL 746377, at *2 (Tenn. Ct. App. Dec. 4, 1997) (quoting *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Pertinent to the asset at issue in this appeal, this Court has held that "[t]he issue of a spousal contribution to the preservation and appreciation in the value of stock is a question of fact." *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992) (internal quotations omitted).

There is no dispute that the dividends received during the marriage were marital property. The trial court held that "the dividends from both classes of UPS stock were marital property when received during the marriage," and the record does not preponderate against the trial court's finding that:

> Wife made a substantial indirect contribution as a wage earner, homemaker, and parent to the preservation of the Class A shares. Without Wife's earned income as a real estate sales professional, homemaker, and parent to Husband's children (Wife's step-children), Husband would have been required to use the dividends paid by the Class A shares to support the family's lifestyle just as he did with the dividends from the Class B shares.

Because the couple elected to reinvest the dividends from the Class A shares to purchase more shares, we agree with the trial court that the 531 shares of Class A stock purchased during the marriage are marital property. On the other hand, the dividends from the Class B shares were used as received to support the family's lifestyle, thus there was no need for the court to divide them.

We now address the issue of whether the increase in the value of the stock over the course of the marriage is marital property or, as the court found, Husband's separate property.

Wife argues that the increase in value of both classes of stock is marital property because her income from 2010 to 2017, when Husband worked without salary for their real estate business, "substantially contributed to the preservation and appreciation of

Husband's UPS stock because otherwise [Husband] would have been forced to either sell shares of the stock or take out additional loans against the stock through his line of credit in order to pay for his lavish living expenses." Elsewhere, she argues that she "accrued an equitable marital interest in *all* UPS stock at issue in this action" because "Husband was able to preserve his shares of stock and allow them to continue to grow and appreciate because of Wife's ability to pay the tax liabilities associated with the stock dividends" and because "Husband was able to preserve the value of the UPS stock by taking out lines of credit against the stock . . . because marital funds, more specifically, Wife's income, were used to make the payments on those lines of credit." In response, Husband argues that "the mere increase in the stock's share price for both the Class A and Class B shares that were originally gifted to Husband prior to the marriage had nothing to do with any marital contribution by Wife. The increase in price was driven by the market."

In support of her arguments, Wife relies primarily upon three opinions of this Court: *Schuett v. Schuett*, No. W2003-00337-COA-R3CV, 2004 WL 689917 (Tenn. Ct. App. Mar. 31, 2004)[6]; *Telfer v. Telfer*, No. M2012-00691-COA-R3CV, 2013 WL 3379370, (Tenn. Ct. App. June 28, 2013), and *Wade v. Wade*, 897 S.W.2d 702 (Tenn. Ct. App. 1994).[7] Husband also relies upon the *Telfer* case.

In *Telfer v. Telfer*, this Court was called upon to determine whether Wife's ownership interest in two of her family's businesses, which had been gifted to her during the marriage, was marital and thus subject to division, or separate property. *Telfer*, 2013 WL

---

[6] In *Schuett*, the Wife, who did not work outside the home, inherited $600,000 which was placed in an investment account, and the income from dividends and capital gains were reinvested. 2004 WL 689917 at *1. Husband used his employment income to pay the taxes on the dividends and capital gains the investment account generated over the course of the marriage. This Court reasoned that "by utilizing marital funds to pay the taxes rather than the funds in the account itself, such contributions allowed the [investment] account to appreciate more than it otherwise would have, if the funds in the account [had] been used to pay the income taxes." *Schuett*, 2004 WL 689917 at *3. We considered the facts that all income generated by the account was reinvested, that the amount of income generated resulted in tax liabilities which were paid with marital funds resulting in a contribution that was "real significant, and more than merely indirect," and that the wife was financially dependent on the husband, whose income was used to support the family and pay the taxes on the gains and dividends. *Id.* We held "the payment of such taxes, under the facts of this case, constitute a substantial contribution by each party to the preservation and appreciation of the [investment] account's increase in value" and that the increase in value of the account was marital property, was subject to equitable division. *Id.* at *3-4.

[7] In *Wade*, this Court held that the appreciation in the value of Husband's shares of stock in several companies, which the trial court had classified as his separate property was marital property because Husband was never required to use any of his stock or dividends for living expenses, thereby allowing the shares to continue to appreciate. 897 S.W.2d at 714. We held that the Wife substantially contributed to the stock's preservation and appreciation by providing both indirect contributions as homemaker, wage earner, parent, family financial manager, and by supporting Husband with her earnings at times when he did not work, as well as direct contributions when she worked at Merrill Lynch where his stocks were held and monitored his stocks on a daily basis. 897 S.W.2d at 714-715.

3379370 at *7. The parties used marital funds to pay tax liabilities that arose when income from the companies was attributed to them for the companies' tax purposes but retained by the companies; the trial court determined that the appreciation in value of Wife's interest was her separate property. *Id.* at 1. We reversed, holding that because the companies retained earnings instead of distributing the income to Wife, thereby permitting the companies to grow and appreciate in value but resulting in significant tax liabilities which were paid with marital funds, a causal link was established to classify the increase in value as marital property. *Id.* at *11, *12.[8]

Husband also relies on the case of *Langschmidt v. Langschmidt*, in which the Tennessee Supreme Court was called upon to determine whether the increase in value of husband's assets, including a money market account, a CD, bonds, bank accounts, and various stocks, during the course of the marriage was marital property. 81 S.W.3d 741, 742, 743 (Tenn. 2002). The trial court found that the appreciation of the assets was completely market-driven, and therefore Wife's contributions did not substantially contribute to the preservation and appreciation of those assets. The Supreme Court agreed with that finding, holding that the appreciation of Husband's assets was his separate property:

> As we stated in *Harrison* [*v. Harrison*], the appreciation of Husband's separate property during the marriage may be classified as martial property only if Wife substantially contributed to its preservation *and* appreciation. 912 S.W.2d [124] at 127 [(Tenn. 1995)]. Although it is clear in this case that Wife contributed to the marriage as a homemaker, there is no evidence that she substantially contributed to the preservation and appreciation of Husband's non-IRA accounts. To the contrary, it is evident that appreciation in the value of these assets was entirely market-driven. Further, although it is certainly clear that Tennessee courts recognize a

---

[8] In reaching that conclusion, we expressly discounted an argument similar to that raised by Wife in this appeal. In *Telfer*, the appellant husband contended that "the parties use of marital funds to pay the parties' income taxes associated with the distributions Wife received from the companies weighs in favor of a finding that the appreciation in value of companies is marital property. We stated:

> Again, we do not see a connection between the payment of the parties' income taxes on the distribution income and the appreciation or preservation of Wife's companies as a whole. The payment of the parties' tax obligation on this income did not serve to "preserve the corpus" in the companies, and we do not view it as a basis to conclude that the parties substantially contributed to the appreciation and preservation of Wife's companies. *Schuett,* 2004 WL 689917, at *3, 2004 Tenn. [Ct.] App. LEXIS 193, at *11.

*Telfer v. Telfer*, No. M2012-00691-COA-R3CV, 2013 WL 3379370, at *11 (Tenn. Ct. App. June 28, 2013).

8

homemaker's contribution when making a determination of marital property, *see* Tenn. [Code Ann.] § 36–4–121(b)(1)(C); *Gragg v. Gragg,* 12 S.W.3d 412, 415 (Tenn. 2000), in the spirit of *Harrison,* we require that some link between the marital efforts of a spouse and the appreciation of the separate property must be established before the separate property's appreciation is considered marital property. . . . Because the appreciation of Husband's non-IRA assets was entirely market driven, and because we find no evidence that Wife substantially contributed to the preservation and appreciation of these assets, we affirm the decision of the Court of Appeals, holding that the appreciation of Husband's non-IRA assets are his separate property.

*Langschmidt v. Langschmidt*, 81 S.W.3d at 746-47.

In light of Husband's testimony, set forth below, we are persuaded that the facts of this case align more closely with those in *Langschmidt* and accordingly apply its rationale and holding to this case. When questioned by Wife, Husband testified:

Q. So would you agree that the stock itself has been able to stay in place and not be sold due to my earned income?
A. I disagree.
Q. Why?
A. Why? Because I think it -- I think that the line of credit [secured by the Class B shares of stock] enabled us to be able to keep our marital assets. I think it enabled you to be able to go and be a free agent. I think it enabled us to do a lot of things.

Had -- had I kept the UPS shares and not opened up a line of credit, I don't think we would have anything -- much to divide up today. I think we -- think it's reversed. I think the line of credit enabled us to be able to keep a lot of our marital estate in place. It enabled us to be able to pay taxes. It enabled us to be able to pay mortgages that we wouldn't normally have been able to pay because we had a huge shortfall from year to year.
***
Q. And from 2004 to 2016, haven't marital funds paid all of the taxes on the dividends --
A. Marital funds, yes.
Q. -- for the Merrill Lynch account [where the Class B shares were held]?
A. Yeah, marital funds, which I contributed to the marital funds.
Q. Well, the dividends that were earned, didn't you say that they went towards the line of credit?
A. Yes.
Q. So that doesn't go into a marital account.
A. No. . . .

9

***

Q. And the marital funds paid taxes on the dividends also on your Class A shares; correct?

A. Yes.

Q. And of those dividends, do those dividends purchase more Class A shares?

A. Yeah. It's in a dividend reinvestment program.

Q. Yes. So because those dividends -- the taxes are paid from those dividends and that allows you to buy more shares with that reinvestment, then don't you believe that there is somewhat of a marital interest in that account?

A. None whatsoever.

Husband also testified as follows when questioned by his attorney:

Q. Is the increase in value of that stock as well as the dividend share reinvestment purely market driven?

A. Yes.

Q. Now, with regard to the -- was it your intention during the marriage to ever, you know, donate or give those shares to the marital estate?

A. It was not my intention, no.

Q. was your intention to the contrary?

A. Yes.

***

Q. Now, the dividends that are paid by the Class B shares roll right over to the line of credit; correct?

A. That's correct, yes.

Q. You don't take those dividends and cash them and put them in an account and then pay a check to the line of credit?

A. No. They -- they -- I just transfer them. When the dividend gets paid, it goes into a dividend account where it holds those funds. And I – and I usually just go online then and transfer those dividend funds to the line of credit.

The shares of UPS stock are Husband's separate property in accordance with Tennessee Code Annotated § 36–4–121(b)(2)(A).[9] Section 36-4-121(b)(1)(B)(i) allows

---

[9] In her brief on appeal, Wife alludes to Husband's activities which she contends support her argument that the stock was transmuted to marital property. She does not raise transmutation as an issue on appeal, and there is no citation to any such evidence being offered or excluded by the court; her citations are to her opening statement and to colloquy between Wife, Husband's counsel, and the court relative to stock other than the UPS stock. While "[s]eparate property can become marital property if inextricably mingled with marital property or with the separate property of the other spouse," *Snodgrass*, 295 S.W.3d at 263 (citing *Langschmidt*, 81 S.W.3d at 747), we have not been cited to evidence in the record that the UPS

10

that marital property includes the increase in value of property determined to be separate property if the non-owning spouse contributed to both the preservation *and* appreciation of the separate property. Accordingly, for the appreciation in the shares' value to become marital property, Wife needed to show that she substantially contributed to the stocks' preservation and appreciation. The record before us fails to support such a conclusion.

Husband testified that the increase in the stock shares' value is "absolutely . . . market driven." Wife did not offer proof to the contrary, and on appeal cites only to evidence that marital funds helped to preserve the stock by permitting Husband to pay taxes on the dividends, without cashing out the stock. Wife has not cited to evidence establishing a nexus between the use of her income to pay the tax liabilities and the appreciation in value of UPS stock.

The court in *Telfer* disposed of an argument similar to Wife's, holding that paying taxes on income from distributions the parties received from companies which had been gifted to the wife "did not serve to 'preserve the corpus' in the companies" and thus this court "did not view it as a basis to conclude that the parties substantially contributed to the appreciation and preservation of Wife's companies." *Telfer* 2013 WL 3379370 at *11. We find that analysis equally applicable in this case, which involves shares of stock in a publicly traded company. In the absence of competent proof that Wife's activities contributed to the appreciation in value, we conclude that the evidence does not preponderate against the trial court's determination that the appreciation in value of the stock was Husband's separate property. *See Sherrill*, 831 S.W.2d at 295. Accordingly, we affirm the trial court's holding.

Wife also contends that she is entitled to an award of attorney's fees for this appeal. In light our resolution of this appeal, we respectfully decline to make such an award.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

RICHARD H. DINKINS, JUDGE

---

stock shares were commingled or otherwise transmuted into marital property.