IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 2, 2022

## ETTA FAYE BECK BOMBACINO v. ANTHONY JOHN BOMBACINO, SR.

**Appeal from the Circuit Court for Bradley County**
**No. V-21-044          J. Michael Sharp, Judge**

_____

**No. E2021-01261-COA-R3-CV**

_____

Etta Faye Beck Bombacino ("Wife") filed for divorce from Anthony John Bombacino ("Husband") on January 29, 2021. Trial was held on July 21, 2021, and the trial court assessed equal fault to the parties and ordered them divorced. The trial court also ordered that the parties split the equity in their home after marital debts were paid and awarded Wife no spousal support. Wife appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Etta Faye Beck Bombacino.

Jeffrey A. Miller, Cleveland, Tennessee, for the appellee, Anthony John Bombacino.

## OPINION

### BACKGROUND

The parties married in Illinois in 1990. At the time, Husband was a painter, and Wife had been working in manufacturing for several years. Wife owned a rental property building which she called a "three-flat" in which the parties lived. They rented the other units. Wife's family hailed from Cleveland, Tennessee, and the parties moved there in 1993. Using the money from the sale of the three-flat in Illinois, as well as some

inheritance money from Husband's mother's estate,[1] the parties purchased a twelve-acre property and built a home. Early in the parties' marriage, Wife paid off a car loan for Husband, and the parties purchased a work van for his painting business. According to Husband, the parties always shared all of their income and never differentiated separate property.

Due to a "horrific" back surgery, Wife began receiving disability in 1995. Her work was intermittent after this, although she did work as a private caretaker at times. Wife made eight dollars an hour as a caretaker but did not report her income because it was in cash, and she did not believe she made enough money to report it. Husband testified that he worked as a painter until approximately 1997,[2] when he also began receiving disability. Husband testified that his disability was for "bone problems" and "feet problems," neuropathy, and depression. Husband also worked briefly at a Holiday Inn in 2017 and 2018, although it is unclear how much money he earned in that job or exactly how long the job lasted.

While the parties were building their first home in Cleveland (the "No Pone Road house"), they were also having two houses built in Illinois. One was for Wife's adult son, and the other was built because the contractor would not travel the distance to build only one house. The parties paid for the two Illinois houses in part with loans taken out jointly. The second Illinois house sold in 1994, and the parties received approximately seventy-two thousand dollars. This money was used for marital expenses.

The parties lived in the No Pone Road house until 2004, when they sold it for $204,000.00. They then purchased a different lot and built a new house (the "Blossom Trail house"). The Blossom Trail house and the lot were paid for with the proceeds of the sale of the No Pone Road house, as well as some loans that were jointly taken out by the parties. In the interim, Wife received inheritance money from both her mother's and son's estates, totaling approximately $66,000.00. While the testimony at trial as to how these funds were used was not precise, the parties seemed to agree that any time they had income, it was deposited into their joint account and used for typical living expenses.

While living in Cleveland, the parties also managed some property for Wife's brother. The property housed a trailer park, and the parties would collect the rents and mow. This property was eventually deeded to Husband and Wife jointly. They sold it in 2014 for approximately $38,000.00. Again, as Wife puts it, the parties used this money to "live on." Around the same time, in 2013, the parties completed construction of their third house in Cleveland (the "Preservation house"). Wife was still living in the Preservation house at the time of trial.

---

[1] Husband inherited approximately fifty-five thousand dollars after the death of his mother.
[2] Wife denied at trial that Husband ever worked during the marriage, but both Husband and Wife's son testified that Husband had a painting company during the early years of the marriage.

The testimony of both parties reflects that they had issues for many years. Wife characterized Husband as verbally, emotionally, and sometimes physically abusive. Husband adamantly denied these allegations and testified that Wife was controlling with the parties' money and that she kicked him out of their home in January of 2021 when he was ill and had nowhere to go. Wife conceded this. Husband testified that he was essentially homeless and had to make his way to Illinois to live with his daughter.

Wife filed for divorce in the Circuit Court for Bradley County (the "trial court") on January 29, 2021, citing irreconcilable differences, inappropriate marital conduct, and abuse. Wife also sought a restraining order. On April 5, 2021, Husband answered and counter-claimed for divorce, alleging inappropriate marital conduct by Wife. Pending trial, Wife remained in the marital home and was ordered by the trial court to pay the associated bills out of the parties' joint checking account, into which both parties' disability payments were still being deposited. Husband was permitted to withdraw $600.00 per month from the account for his expenses. Before trial, Husband filed a motion for the marital home to be sold and the equity divided equally between the parties, arguing that it was the parties' only significant asset and noting the recent upturn in the housing market. This motion was not resolved by the time of trial, however.

Trial was held on July 21, 2021, and the trial court heard testimony from the parties and Wife's son. While many of the underlying facts regarding the parties' finances and income were undisputed, Husband and Wife disagreed about the extent to which they had each contributed to the marriage. Wife maintained that she came into the marriage with considerable separate property that allowed the parties to keep generating income. Wife took the position that the sale of her rental property in Illinois at the beginning of the marriage was essential to the parties' ability to build homes in Cleveland and Illinois. She maintained that Husband contributed nothing to the marriage over the years other than occasionally cooking and grocery shopping. On the other hand, Husband testified that he wanted to be more involved in the parties' financial decisions but that Wife would not let him. Husband testified that he contributed to the upkeep and maintenance of every property they ever owned, including doing all landscaping, mowing, and repairs. He also testified that every time the parties built a home, Husband supervised the contracting and assisted when necessary. Wife's son also testified briefly, noting that he was helping Wife take out a loan, guaranteed by the son, so that Wife could buy Husband out of his equity in the marital home.

The trial court entered its final order on September 28, 2021. As relevant to the issues on appeal, the trial court found as follows:

> The court finds that both of these parties are disabled, and that both of these parties have been receiving Social Security income due to their respective disability for most of the entirety of the marriage. [Wife] began receiving full disability payments in 1995, [Husband] began receiving full

- 3 -

disability payments in 1997. Currently, [Husband] receives $1,733.00 per month in Social Security disability, and [Wife] receives $1,190.00 per month in disability benefits. [Husband] also receives an additional $125.00 per month from a retirement pension. Neither party has any other source of income.

\*　　\*　　\*

With regard to grounds for divorce, the court has given consideration to [Wife's] allegations in her complaint, as compared to the actual proof that was presented to the court. While the court finds that these parties obviously do not get along, and probably have not gotten along for many years, and while the court finds that the parties have at times yelled at one another, the court does not find any evidence of any physical or ongoing verbal abuse.

\*　　\*　　\*

With regard to the sale of the home and the division of any equity proceeds from the sale of the home, the court finds, as mentioned above, that this is a marriage of long duration. The court finds that during the entirety of this marriage, these parties comingled all of their funds from various income sources, and at all times throughout the course of the marriage both parties participated in building and selling various homes. While the court recognizes and acknowledges that [Wife] came into the marriage with the initial equity from the sale of her home from her prior marriage, the court also finds that more than 30 years have passed and the home values while the parties have been in Cleveland, Bradley County, Tennessee, have so increased through the years that it is impossible to make an accurate determination as to the value of the [W]ife's separate property.

\*　　\*　　\*

The court finds that both parties apparently used all of their inheritance monies for the overall promotion of the marriage, and the ongoing everyday expenses and/or obligations of the marriage. The court finds that the parties have always comingled all of their funds from inheritance monies, and the sale of property or other items, into their joint accounts. The court finds that both parties effectively lived on an ongoing basis, for the last 30+ years, out of funds that each received from various sources. The court finds that there has always been a co-mingling of the parties['] individual separate assets with the other part[y's] individual separate assets. However, the court finds that there is a disparity between what [Wife] contributed through inheritance and/or retirement funds, as

- 4 -

opposed to what [Husband] contributed through inheritance and/or retirement funds. However, the court must also consider the fact that there is also a great disparity between what [Husband] has contributed on a monthly basis based upon his income of $1,858.00 per month, as opposed to [Wife's] income contribution of $1,190.00 per month. Given this $658.00 per month difference, the rules of equity [require] the court to give [Husband] consideration for his contributions there, just as the court will give consideration to [Wife's] contributions.

Based upon the consideration of all of these factors, especially the ongoing co-mingling of their monies, the court finds that the most equitable means of dividing the parties' real estate is simply to sell the same, to pay off the parties' [debts].

Accordingly, the trial court rejected Wife's argument that the sale of her separate property at the beginning of the marriage entitled her to a much greater portion of the parties' current marital estate. The trial court went on to conclude that if Wife wished to purchase the marital home, which the parties and the trial court valued at $232,000.00, she could do so; if she were to do so, the court ordered that Wife use the proceeds to pay the parties' marital debts before splitting the remaining equity with Husband. The parties' debts, including a small mortgage and a line of equity on the Preservation house, totaled $51,819.28. Most of the parties' furnishings and household items were awarded to Wife, totaling approximately $7,200.00. Husband was awarded a recliner as well as tools, a lawnmower, and fishing gear. Husband's awarded personal property was valued at approximately $2,600.00.[3] Both parties were awarded their respective vehicles, Wife a Honda CRV worth $15,000.00 and Husband a 1999 truck which Husband valued at $1,000.00, but to which the trial court assigned no value. The parties' joint bank account, which was worth $3,600.00, was divided equally.

Finally, the trial court concluded that Wife was not entitled to spousal support:

Given the findings as set out herein, and specifically given the fact that the court finds that neither of these parties have any substantial assets, nor monthly income going forward, the court finds that [Wife] effectively leaves the marriage with a slightly greater amount of assets than will [Husband], given the personal property division set out above and agreed to between the parties. Given the fact that [Wife] is going to be owning the home with her son and he will be contributing to the monthly payments and monthly expenses regarding home, the court finds that [Wife's] monthly income situation will be equal to or greater than [Husband's] monthly income situation. The court notes that [Husband] is apparently moving to Illinois,

---

[3] These figures are based on a master asset list agreed to by the parties and entered as an exhibit.

and based on his income and expense statement, believes that he will be paying a far greater amount in monthly rent than [Wife] will be paying for her monthly mortgage payment. The court finds that [Wife] is in no worse economic situation than is [Husband]. Furthermore, the court finds that [Husband] simply does not have the ability to pay alimony, given the parties' economic realities.

The trial court also ordered both parties to pay their attorney's fees and equally split court costs. Wife filed a timely notice of appeal to this Court.

## ISSUES

Wife raises two issues on appeal, which we have restated slightly:

I.      Whether the trial court erred in its division of the marital estate.

II.     Whether the trial court erred in concluding that Wife was not entitled to alimony.

Husband raises no additional issues in his posture as appellee.

## DISCUSSION

### *Property division*

The trial court's division of the marital estate is given deference on appeal:

> This Court gives great weight to a trial court's decisions regarding the division of marital assets, and we will not disturb the trial court's ruling unless the distribution lacks proper evidentiary support, misapplies statutory requirements or procedures, or results in some error of law. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). As to the trial court's findings of fact, "we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary." *Id.* However, we accord no presumption of correctness to the trial court's conclusions of law. *Id.*

*Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245–46 (Tenn. 2009).

Wife argues that the trial court erred in dividing the marital estate essentially 50/50 between the parties. Wife's Court of Appeals Rule 7 table[4] provides that Wife's net total

---

[4] Husband did not file a Rule 7 table with his brief and does not challenge Wife's valuations of any

from the marital estate is $108,089.71, while Husband's is $92,960.36. As she did in the trial court, Wife maintains that because she entered the marriage with more separate property and claims she contributed more financially to the marriage, she is entitled to a greater portion of the marital estate. Wife asserts in her brief that a more equitable split would be $132,864.84 to Wife and $71,542.60 to Husband. Because the trial court's ruling does not lack evidentiary support, misapply statutory requirements or procedures, or result in an error of law, we must affirm. *See id.*

After classifying and valuing marital property, a trial court endeavors to equitably divide it among the parties. *See* Tenn. Code Ann. § 36-4-121(a)(1); *Luplow v. Luplow*, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014) (citing *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001)). An equitable division of marital property does not necessarily require that the property be divided equally. *Id.* at 109–10 (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002)). Nor does it require that each party receive a share of every item classified as marital property. *Morton v. Morton*, 182 S.W.3d 821, 833–34 (Tenn. Ct. App. 2005) (quoting *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998)). In making its determination, the trial court must consider statutory factors in view of the evidence presented by the parties. Tenn. Code Ann. § 36-4-121(c); *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). These factors are:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a

---

property on appeal.

purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse;

(12) Such other factors as are necessary to consider the equities between the parties; and

(13) The total amount of attorney fees and expenses paid by each party in connection with the proceedings; whether the attorney fees and expenses were paid from marital property, separate property, or funds borrowed by a party; and the reasonableness, under the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct, and necessity of the attorney fees and expenses paid by each party.

Tenn. Code Ann. § 36-4-121(c).

Here, we cannot conclude that one particular factor weighs heavily in favor of either party, nor can we conclude that the trial court erred in dividing the marital estate as it did. First, the marriage was of long duration. Tenn. Code Ann. § 36-4-121(c)(1). Second, neither of the parties is in strong financial condition. Tenn. Code Ann. § 36-4-121(c)(2). Husband was seventy-four at the time of trial, and Wife was seventy-eight; neither of them were educated past the eleventh grade, and both had numerous and significant health issues. To that point, neither Husband nor Wife had a steady salary during most of the marriage.

While they both claimed to have worked at various times, the only proof offered was their own testimony and that of Wife's son.[5] It is undisputed that both parties must now subsist primarily on their respective disability payments. In short, factor two of section 36-4-121(c) does not favor either Husband or Wife. In the same vein, both Husband and Wife have limited ability for "future acquisitions of capital assets and income," and both parties face difficult economic circumstances once the marital estate is divided. *Id.* § 36-4-121(c)(4) & (c)(8).

Turning to factor three, the contributions by one party to the education, training or increased earning power of the other party, we also cannot conclude that this factor favors Husband or Wife. Both parties were trained in their respective industries by the time of the marriage, and neither worked for very long after they married. While it is undisputed that a work van was purchased for Husband's painting business, the parties were married by this point, and their funds were commingled.

Factors five through seven present the primary dispute between the parties. These factors address the various contributions to the marriage and the value of each party's separate property. *Id.* § 36-4-121(c)(5)-(7). Wife urges that she is entitled to a greater distribution of the marital estate because she generally contributed more to the marriage. Specifically, Wife notes that the parties were able to move to Cleveland from Illinois due to the sale of her rental property acquired before the marriage, and she argues that the various inheritances she received throughout the years sustained the parties. According to Wife, a division of marital property awarding her more of the marital estate is equitable under the circumstances, and she contends the trial court "erred in its application of T.C.A. § 36-4-121(c) to the facts of this case." Wife also argues that the trial court miscalculated the dollar amount of Wife's separate contributions, explaining in her brief:

> Specifically, the amount of the contributions credited to Wife by the Trial Court are as follows:
>
> • Wife's purchase of a van for Husband in the amount of $8,800.00 (TR Vol. I, p. 26);
>
> • Wife's payoff of Husband's Toyota truck loan in the amount of $6,500.00 (TR Vol. I, p. 26);
>
> • Wife's inheritance from her mother of $10,000.00 (TR Vol. I, p. 26);
>
> • Wife's inheritance from her son of $56,000.00 (TR Vol. I, p. 26);

---

[5] The trial court did not specifically credit either party's testimony over the other; rather, in concluding that both were at fault for the breakdown of the marriage and dividing the estate nearly 50/50, the trial court appears to have credited the parties' testimony equally.

• Wife's receipt of $120,000.00, at $500.00 per month over a twenty (20) year period relative to property which was inherited by Wife from her brother's estate and which generated rental income (TR Vol. I, p. 26);

• Wife's premarital cash equity from the sale of a home that she owned prior to the marriage in the amount of $75,000.00 (TR Vol. I, p. 26); and

• Wife's liquidation of a $20,000.00 pre-marital retirement account (TR Vol. I, p. 27).

Allowing the above figures, as calculated by the Trial Court, to speak for themselves, Wife's total contributions would be $296,300.00. However, within the Final Order, the Trial Court held:

"Based upon this finding, the court finds that [Wife's] inheritance received from those sources other than the rental income of $500.00 per month totals roughly $105,000.00." (TR Vol. I, p. 31).

Nonetheless, Wife's disagreement with the trial court's division does not warrant reversal, as the trial court's division does not "lack[] proper evidentiary support, misappl[y] statutory requirements or procedures, or result[] in some error of law." *Snodgrass*, 295 S.W.3d at 245 (citing *Keyt*, 244 S.W.3d at 327). Further, any mathematical error in the trial court's order is harmless under the circumstances, inasmuch as the evidence establishes that the parties' respective contributions throughout the marriage were comparable. As the trial court explained in its final order, whatever separate property Wife brought into the marriage was inextricably commingled with marital funds, as it is undisputed that the parties always used a joint bank account to cover living expenses and marital debts. Wife had no separate property by the time of trial. While it is true that the sale of Wife's rental property in Illinois helped the parties move to Tennessee, Husband also received $55,000.00 in inheritance money from his mother's estate around the same time. Husband testified that this money was also put towards purchasing the parties' first lot and home in Cleveland, and Wife offered no proof otherwise. Husband also testified that he helped Wife's brothers build the No Pone Road house, although Wife did dispute that testimony. In any event, the parties both contributed separate property towards establishing their life in Tennessee. After that point, the parties' primary sources of income were the sale of their various properties and their monthly disability checks. Additionally, Husband testified that the parties jointly borrowed some money for the construction of the Blossom Trail house and the Preservation house.

While Wife makes much of the inheritances she received over the years, there is no evidence that this money was held as separate property. Wife agreed with Husband that, like Husband's inheritance money, Wife's inheritance money was used to pay marital expenses and debts. Wife also points to the $20,000.00 of retirement that she cashed out

in 1991 or 1992. Nonetheless, Husband contributed $125.00 per month of his retirement money throughout the marriage. Consequently, both Husband and Wife contributed inheritance and retirement funds to the marriage.

More broadly, the record simply does not support Wife's assertions that Husband never contributed to the marriage at all. Husband and Wife's adult son both testified that Husband worked as a painter in the early years of the marriage. Husband also contributed his monthly disability to the parties' joint funds, same as Wife. Wife admitted that when she and Husband were taking care of the trailer park in Cleveland, Husband helped with upkeep by mowing, landscaping, and collecting rent money. Moreover, while Wife now claims that this property was her separate contribution, Husband testified that the land was eventually deeded jointly to the parties. Again, Wife offered no proof otherwise, and confirmed that the parties decided together to sell the land in 2014 because they could no longer maintain it.

Although Wife may have contributed slightly more to the marriage in the beginning, the trial court correctly concluded that the parties' respective contributions over the life of the marriage were similar. *See id.* § 36-4-121(c)(5)-(7). Likewise, none of the remaining statutory factors militate heavily in favor of either party. *Id.* § 36-4-121(c)(9)-(13).

The trial court appropriately factored in both parties' respective contributions and considered the equities between the parties, and we give great weight to the resulting division of property. *Luplow*, 450 S.W.3d at 110. "[U]nless it is inconsistent with the factors at Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence[,]" we defer to the trial court's ruling. *Id.* (quoting *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994)). Because the trial court's ruling is consistent with the pertinent factors and supported by the evidence, we do not disturb the trial court's division of the marital estate.

### *Alimony*

Next, Wife asserts that the trial court should have awarded her alimony in solido. Our standard of review of the trial court's spousal support decision is as follows.

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful

balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105–06 (Tenn. 2011) (internal citations and footnote omitted).

A trial court's award of spousal support is governed by Tenn. Code Ann. § 36-5-121(i), which provides:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the

- 12 -

necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The trial court denied Wife's request for alimony because the parties' financial circumstances are essentially the same. Wife's argument regarding alimony in solido is largely the same as her argument challenging the property division:

Wife respectfully avers that the Trial Court erred in not making an award of alimony in solido, either in addition to or in lieu of an adjustment of the property division in favor of Wife. As applicable and relevant to this case, Wife avers that the Trial Court should have considered the gross disparity in the parties' tangible contributions to the marriage, discussed above, the standard of living the parties were able to establish and maintain during the

- 13 -

marriage, which were also attributable to Wife's contributions and the provisions (or lack thereof) made by the Trial Court with regard to the division of marital property as defined by T.C.A. § 36-4-121.

Again, Wife's argument is that she disagrees with the trial court's decision, but there has been no error of law, and the result is not clearly unreasonable. *See Gonsewski*, 350 S.W.3d at 105-06. As addressed above, the record before us does not support Wife's contentions that she alone contributed to the parties' marriage. The parties are of similar age, have similar limited earning potential, and both suffer from numerous health issues. Additionally, the trial court found both parties at fault for the divorce and determined that Wife's abuse allegations were unfounded. Wife's only income is $1,190.00 in disability, while Husband's monthly disability award of $1,733.00 is only marginally higher than Wife's. Husband receives another $125.00 per month from a pension. However, Wife received more personal property from the marital estate, as well as a more valuable vehicle. The proof at trial also suggested that Wife was able to remain in the Preservation house with the financial assistance of her son who had already applied for a loan to help Wife buy out Husband's equity. Meanwhile, Husband was living temporarily in his daughter's basement and was unsure where he would live long-term. The parties' largest bank account contained $3,600.00 and was divided equally. Beyond the equity in the Preservation house, neither party has significant assets. The stark reality for both parties is that their financial well-being now largely depends upon their respective adult children.

It is axiomatic that "the two most important factors considered are the need of the disadvantaged spouse and the obligor spouse's ability to pay." *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Gonsewski*, 350 S.W.3d at 110. As the trial court aptly noted, "[Wife] is in no worse economic situation than is [Husband,]" and "[Husband] simply does not have the ability to pay alimony, given the parties' economic realities." We agree with this assessment and affirm the trial court's ruling that Wife is not entitled to an award of spousal support under these particular circumstances.

**CONCLUSION**

The ruling of the Circuit Court for Bradley County is affirmed. Costs of this appeal are assessed to the Appellant, Etta Faye Beck Bombacino.

_____
KRISTI M. DAVIS, JUDGE